**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | |
|---|---|
| ALEXSIS WEBB and MARSCLETTE CHARLEY, on behalf of themselves and all others similarly situated, | |
| Plaintiffs, | Case No. 1:22-cv-10797-RGS |
| v. | Judge Richard G. Stearns |
| INJURED WORKERS PHARMACY, LLC, | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'**
**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

## TABLE OF CONTENTS

I.    INTRODUCTION ....................................................................................... 1

II.   FACTUAL AND PROCEDURAL BACKGROUND................................... 2

III.  SUMMARY OF THE SETTLEMENT ....................................................... 3

    A.   DEFINITION OF THE CLASS ...................................................................... 3

    B.   THE SETTLEMENT TERMS AND BENEFITS TO THE SETTLEMENT CLASS ....................... 3

          1.    *Settlement Fund* ................................................................... 3

          2.    *Compensation for Unreimbursed Economic Losses* ........................ 4

          3.    *Pro Rata Cash Payment* ......................................................... 4

          4.    *Credit Monitoring* ................................................................ 5

          5.    *Additional Security Measures* .................................................. 5

          6.    *Notice, Claims Process, and Settlement Administration* ................ 5

          7.    *Attorneys' Fees, Expenses, and Service Awards* ........................... 6

IV.  THE PROPOSED SETTLEMENT WARRANTS PRELIMNARY APPROVAL ............ 6

    A.   STANDARDS FOR PRELIMINARY APPROVAL.................................................. 6

    B.   THE RULE 23(E) FACTORS ARE SATISFIED ................................................ 8

          1.    *Rule 23(e)(2)(A) – Class Representatives and Class Counsel Adequately Represented the Class* ......................................... 8

          2.    *Rule 23(e)(2)(A) – The Settlement was Negotiated at Arm's-Length* ............. 10

          3.    *Rule 23(e)(2)(C) – The Relief Provided is Adequate* ..................... 11

                a.    Rule 23(e)(2)(C)(i) – Costs, Risks, and Delay of Trial and Appeal........ 11

                b.    Rule 23(e)(2)(C)(ii) – Effectiveness of the Proposed Method of Distributing Relief............................. 13

                c.    Rule 23(e)(2)(c)(iii) – Attorney's Fees ................................. 14

d.   Rule 23(e)(2)(c)(iv) – Agreements Required to be Identified under Rule 23(e)(3) ................................................................................................. 14

4.   *Rule 23(e)(2)(D) - Class Members Are Treated Equitably* ........................... 15

V.   THE SETTLEMENT CLASS SHOULD BE CERTIFIED ................................................. 16

A.   THE RULE 23(A) FACTORS ARE MET ........................................................................ 16

1.   *The Class Is Sufficiently Numerous* ................................................................. 16

2.   *Questions of Law or Fact are Common to the Class* ..................................... 16

3.   *Plaintiffs' Claims Are Typical* ......................................................................... 16

4.   *Plaintiffs Will Fairly and Adequately Protect the Class* ................................ 17

B.   THE SETTLEMENT CLASS SATISFIES RULE 23(B)(3) .................................................. 17

1.   *Common Questions Predominate* ................................................................... 17

2.   *The Class Is the Superior Method of Adjudication* ......................................... 18

VI.   THE PROPOSED NOTICE PROGRAM SHOULD BE APPROVED ........................... 19

VII.   CONCLUSION .................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**PAGE(S)**

**CASES**

*Amgen, Inc. v. Conn. Retirement Plans and Trust Funds*,
    568 U.S. 455 (2013) ........................................................................................ 17

*Andrews v. Bechtel Power Corp.*,
    780 F.2d 124 (1st Cir. 1985) ........................................................................ 17

*Ark. Teacher Ret. Sys. v. State St. Bank & Tr. Co.*,
    404 F. Supp. 3d 486 (D. Mass. 2018) ............................................................ 9

*Bingaman, et al. v. Avem Health Partners Inc.*,
    Case No. CIV23-130-SLP (W.D. Okla.) ....................................................... 12

*Bray. v. GameStop Corp.*,
    No. 17-CV-01365 (D. Del. Dec. 19, 2018) ................................................... 15

*Castillo v. Seagate Tech., LLC*,
    No. 16-01958, 2017 WL 4798611 (N.D. Cal. Oct. 19, 2017) ....................... 18

*Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*,
    *888 F.3d 455 (10th Cir. 2017)* ..................................................................... 15

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) ........................................................................... 8

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974) ...................................................................................... 19

*Fernandez v. 90 Degree Benefits*,
    No. 2:22-cv-00799 (W.D. Wis.) ................................................................... 12

*Glass Dimensions, Inc. v. State St. Bank & Tr. Co.*,
    285 F.R.D. 169 (D. Mass. 2012) .................................................................. 17

*Gordon v. Chipotle Mexican Grill, Inc.*,
    No. 17-CV-01415 (D. Colo. Dec. 16, 2019) ........................................... 11, 15

*Greenspun v. Bogan*,
    492 F.2d 375 (1st Cir. 1974) ........................................................................ 20

*Hill v. State Street Corp.*,
  2015 WL 127728 (D. Mass. Jan. 8, 2015) ......................................................... 20

*Hotel Holiday Inn de Isla Verde v. N.L.R.B.*,
  723 F.2d 169 (1st Cir. 1983) ............................................................................. 6

*In re Anthem, Inc. Data Breach Litig.*,
  327 F.R.D. 299 (N.D. Cal. Aug. 15, 2018) ....................................................... 18

*In re Brinker Data Incident Litig.*,
  No. 3:18-cv-686-TJC-MCR, 2021 WL 1405508 (M.D. Fla. Apr. 14, 2021) ......... 16

*In re C.R. England, Inc. Data Breach Litigation*,
  No. 2:22-cv-374-DAK (D. Utah) ....................................................................... 12

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
  216 F.R.D. 197 (D. Me. 2003) ........................................................................... 7

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,
  No. 3:08-MD-01998, 2010 WL 3341200 (W.D. Ky. Aug. 23, 2010) .................... 11

*In re Credit Suisse-AOL Sec. Litig.*,
  253 F.R.D. 17 (D. Mass. 2008) ......................................................................... 16

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liability Litig.*,
  55 F.3d 768 (3d Cir. 1995) ............................................................................... 7

*In re Heartland Payment Sys., Inc. Cust. Data Sec. Breach Litig.*,
  851 F. Supp. 2d 1040 (S.D. Tex. 2012) ............................................................ 18

*In re Lupron Mktg. and Sales Practices Litig.*,
  228 F.R.D. 75 (D. Mass. 2005) ..................................................................... 7, 11

*In re Neurontin Mktg. & Sales Practices Litig.*,
  No. 04-cv-10981-PBS, 2014 WL 5810625 (D. Mass. Nov. 10, 2014) .................. 14

*In re Pharm. Indus. Average Wholesale Price Litig.*,
  588 F.3d 24 (1st Cir. 2009 ................................................................................ 8

*In re Premera Blue Cross Customer Data Sec. Breach Litig.*,
  No. 3:15-MD- 2633-SI, 2019 WL 3410382 (D. Or. July 29, 2019) ...................... 11

*In re Ranbaxy Generic Drug Application Antitrust Litig.*,
  No. 19-MD-02878-NMG, 2022 WL 4329646 (D. Mass. Sept. 19, 2022) .............. 8

*In re Relafen Antitrust Litig.*,
   231 F.R.D. 52 (D. Mass. 2005) ................................................................................. 7, 8, 15

*In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*,
   2016 WL 6902351 (N.D. Ga. Aug. 23, 2016) ......................................................... 18

*In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*,
   No. 1:14-MD-02583-TWT, 2016 WL 6902351 (N.D. Ga. Aug. 23, 2016) ........... 11

*Jean-Pierre v. J&L Cable TV Servs., Inc.*,
   538 F. Supp. 3d 208 (D. Mass. 2021) ...................................................................... 7, 9

*Julien v. Cash Express, LLC*,
   No. 2022-CV-221 (Putnam Cty., Tenn.) .................................................................. 13

*Kesner, et al. v. UMass Memorial Health Care, Inc.*,
   No. 2185-cv-01210 (Mass. Supp. Ct.) ..................................................................... 12

*Koenig v. Lime Crime, Inc.*,
   No. CV 16-503 PSG (JEMx), 2018 WL 11358228 (C.D. Cal. Apr. 2, 2018) ......... 11

*Kondo et al. v. Creative Services, Inc.*,
   Case No. 1:22-cv-10438-DJC (D. Mass.) ................................................................ 13

*Mazola v. May Dep't Stores Co.*,
   No. 97 Civ. 10872, 1999 WL 1261312 (D. Mass. Jan. 27, 1999) ........................... 14

*Morris v. Affinity Health Plan, Inc.*,
   859 F. Supp. 2d 611 (S.D.N.Y. 2012) ...................................................................... 11

*Mullane v. Central Hanover Bank and Trust Co.*,
   339 U.S. 306 (1950) .................................................................................................. 19

*Nat'l Ass'n of Deaf v. Massachusetts Inst. of Tech.*,
   No. 3:15-CV-30024-KAR, 2020 WL 1495903 (D. Mass. Mar. 27, 2020) .............. 10

*Reynolds v. Marymount Manhattan College*,
   *No. 1:22-cv-06846 (S.D.N.Y.)* ................................................................................ 13

*Roberts v. TJX Companies, Inc.*,
   No. 13-CV-13142-ADB, 2016 WL 8677312 (D. Mass. Sept. 30, 2016) ................... 8

*Rolland v. Cellucci*,
   191 F.R.D. 3 (D. Mass. 2000) ................................................................................... 11

*S. States Police Benevolent Ass'n, Inc. v. First Choice Armor & Equip., Inc.*,
   241 F.R.D. 85 (D. Mass. 2007) ................................................................ 16

*Smilow v. Southwestern Bell Mobile Sys., Inc.*,
   323 F.3d 32 (1st Cir. 2003) ................................................................... 18

*Torres v. Wendy's Int'l LLC*,
   No. 6:16-cv-00210 (M.D. Fla. Feb. 26, 2019) ....................................... 15

*U.S. v. Comunidades Unidas Contra La Contaminacion*,
   204 F.3d 275 (1st Cir. 2000) ................................................................... 6

*Weiss v. Arby's Restaurant Grp. Inc.*,
   No. 17-cv-01035 (N.D. Ga. June 6, 2019) ............................................. 15

**RULES**

Fed. R. Civ. P. 23 ..................................................................................... 15, 17

Fed. R. Civ. P. 23(a) ................................................................................. 16, 17

Fed. R. Civ. P. 23(a)(1) .................................................................................. 16

Fed. R. Civ. P. 23(a)(2) .................................................................................. 16

Fed. R. Civ. P. 23(a)(3) .................................................................................. 16

Fed. R. Civ. P. 23(a)(4) .................................................................................. 17

Fed. R. Civ. P. 23(b)(3) .................................................................................. 17

Fed. R. Civ. P. 23(c)(2) .................................................................................. 19

Fed. R. Civ. P. 23(e) ........................................................................... 5, 7, 8, 15

Fed. R. Civ. P. 23(e)(2)(A) .......................................................................... 8, 10

Fed. R. Civ. P. 23(e)(2)(A-B) ............................................................................ 8

Fed. R. Civ. P. 23(e)(2)(C) .............................................................................. 11

Fed. R. Civ. P. 23(e)(2)(C)(i) .......................................................................... 11

Fed. R. Civ. P. 23(e)(2)(C)(ii) ......................................................................... 13

Fed. R. Civ. P. 23(e)(2)(C)(iii) ........................................................................ 14

Fed. R. Civ. P. 23(e)(2)(C)(iv)..............................................................................................14

Fed. R. Civ. P. 23(e)(2)(C-D)...............................................................................................11

Fed. R. Civ. P. 23(e)(2)(D)....................................................................................................15

Fed. R. Civ. P. 23(e)(3)......................................................................................................7, 14

Fed. R. Civ. P. 23(e)(2)..........................................................................................................6

Fed. R. Civ. P. 23(e)(2)(D)....................................................................................................15

**OTHER AUTHORITIES**

*Manual for Complex Litigation*, Third, § 30.41 (1995)..............................................................7

Plaintiffs Alexis Webb and Marsclette Charley, individually and on behalf of the putative class, submit this Memorandum of Law in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement (the "Motion"). [1]

## I.   INTRODUCTION

This action arises from a January 2021 Data Incident where it is alleged that certain personally identifiable information ("PII") and personal health information ("PHI") of Injured Workers Pharmacy, LLC's ("IWP") current and former customers was exposed. Specifically, the following types of PII were allegedly exposed: name, address, date of birth, email address, Social Security number, driver's license, payment card information, financial account information, patient identification number, medical record number, treating or referring physician, treatment information, prescription information, health insurance information, and Medicare or Medicaid number. In February 2022, IWP began notifying Plaintiffs and the Settlement Class about the Data Incident.

After over two years of litigation, including a successful appeal to the First Circuit, and months of hard-fought negotiations, the Parties have agreed to a Settlement that provides substantial monetary benefits to the Settlement Class. Specifically, the Settlement provides for a $1,075,000 non-reversionary common fund from which Settlement Class Members may claim reimbursement for economic losses and cash payments. The Settlement provides additional relief in the form of verification of meaningful enhancements to Defendant's cybersecurity as it relates to the Settlement Class Members' PII.

As detailed below, the Settlement falls within the range of possible final judicial approval

---

[1] Unless otherwise stated, all capitalized terms shall have the definitions set forth in the Class Action Settlement Agreement and Release ("Settlement Agreement"), attached as Exhibit 1 to this memorandum. Citations to the Settlement Agreement are abbreviated as "SA ¶ __ .

and includes a comprehensive notice plan. IWP does not oppose the relief requested in the motion.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

On May 24, 2022, Plaintiffs, individually and on behalf of a putative class, filed the Litigation, alleging the following claims: negligence, negligence per se, breach of implied contract, unjust enrichment, invasion of privacy, and breach of fiduciary duty.

Following full briefing, the Court granted IWP's motion to dismiss Plaintiffs' claims. Plaintiffs appealed that ruling to the First Circuit Court of Appeals, which reversed in part and remanded. After additional motion to dismiss briefing, the Court ruled that Plaintiffs' negligence and breach of fiduciary duty claims could proceed.

Plaintiffs commenced formal discovery, serving interrogatories and document requests on Defendant.  On March 5, 2024, after a period of informal discovery and mutual exchange of information, the Parties engaged in a private mediation with Judge Wayne Andersen (Ret.) from JAMS, an experienced mediator. Throughout their mediation session, the Parties engaged in an extensive evaluation and discussion of the relevant facts and law, and the Parties carefully considered the risk and uncertainties of continued litigation and all other factors bearing on the merits of settlement. Although the mediation did not result in a settlement, the Parties continued their negotiations and, in the following weeks, succeeded in reaching agreement on the principal terms of a settlement—subject to final mutual agreement on all the necessary documentation.

While the negotiations were professional throughout, they were marked by significant factual and legal disputes impacting the value of the case. With Judge Andersen's assistance and guidance, and his mediator's proposal, the Parties were able to reach a resolution. At all times the negotiations were at arm's-length, and free of collusion of any kind. Attorneys' fees were not discussed in any manner during the mediation, with the Parties only negotiating the total amount of the non-reversionary Settlement Fund from which any award of attorneys' fees will be made.

The Parties then negotiated the granular terms of the Settlement, and finalized the Settlement Agreement on July 30, 2024. Plaintiffs now bring this Settlement before the Court for preliminary approval. Plaintiffs and their Counsel believe, in consideration of all circumstances and after serious arm's-length settlement negotiations with IWP, that the proposed Settlement is fair, reasonable, and adequate and is in the best interests of the Settlement Class Members. *See* Joint Declaration of Plaintiffs' Counsel ("Joint Decl."), attached hereto as Exhibit 2, ¶ 16.

## III.    SUMMARY OF THE SETTLEMENT

### A.  Definition of the Class

The Parties contemplate certification, for settlement purposes only, of a nationwide class. The Settlement Class is comprised of approximately 131,000 individuals.  The proposed Settlement Class is defined as follows:

> All individuals residing in the United States for whom Defendant has contact information and/or identifying information, such as date of birth or Social Security number, whose Personal Information was potentially compromised in the Data Incident disclosed by Injured Workers Pharmacy in February 2022.

SA ¶ 47.

The Settlement Class specifically excludes: (1) the judges presiding over this Action, and members of their direct families; (2) the Defendant, their subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or their parents have a controlling interest, and their current or former officers and directors; and (3) Settlement Class Members who submit a valid Request for Exclusion prior to the Opt-Out Deadline. SA ¶ 47.

### B.  The Settlement Terms and Benefits to the Settlement Class

#### 1.  Settlement Fund

IWP will make available to the Settlement Class a generous non-reversionary Settlement Fund of $1,075,000.00. SA ¶ 56. The Settlement Fund will be used to pay for the following: (i)

Notice and Administrative Expenses; (ii) Taxes and Tax-Related Expenses; (iii) Service Award Payments approved by the Court; (iv) Fee Award and Costs approved by the Court; (v) reimbursements for Unreimbursed Economic Losses; (vi) credit monitoring to the Settlement Class; and (vii) Pro Rata Cash Payments. SA ¶ 64. IWP will also pay costs associated with additional security-related measures (measures that were disclosed prior to the mediation) separate and apart from the Settlement Fund. SA ¶ 75.

The specific benefits available to Settlement Class Members are discussed below.

### 2. Compensation for Unreimbursed Economic Losses

Settlement Class Members may claim up to $5,000.00 per person for unreimbursed ordinary and/or extraordinary economic losses incurred as a result of the Data Incident, including, without limitation, unreimbursed losses relating to fraud or identity theft; professional fees including attorneys' fees, accountants' fees, and fees for credit repair services; costs associated with freezing or unfreezing credit with any credit reporting agency; credit monitoring costs that were incurred on or after the Data Incident through the date of claim submission; and miscellaneous expenses such as notary, fax, postage, copying, mileage, and long-distance telephone charges. Participating Settlement Class Members with ordinary and/or extraordinary economic losses must submit documentation supporting their claims. SA ¶ 61(ii). Class Members may receive compensation for both Unreimbursed Economic Losses and Pro Rata Cash Payments, subject to a combined monetary benefits cap of $5,000 per Class Member. *Id.*

### 3. Pro Rata Cash Payment

Participating Settlement Class Members can elect to make a claim for a pro rata share of the Net Settlement Fund, less all valid claims for Unreimbursed Economic Losses. SA ¶ 60(iii). To receive this benefit, Participating Settlement Class Members must submit a valid claim form, but no documentation is required to make a claim.  The amount of the Cash Payments will be

increased or decreased on a pro rata basis, depending upon the number of valid claims filed and the amount of funds available for these payments. Class Counsel predicts the value of pro rata payments will exceed $50 per valid claimant.

### 4. Credit Monitoring

Participating Settlement Class Members may elect to make a claim for two (2) years of credit monitoring services, regardless of whether they have submitted a claim for other benefits. SA ¶ 60(i).

### 5. Additional Security Measures

The Settlement also provides that IWP has confirmed that it has made certain changes to its information security and will attest to these changes in a confidential declaration in support of the Settlement. SA ¶ 75. Within thirty (30) days after the entry of the Preliminary Approval Order, Defendant shall provide Class Counsel with a confidential declaration or affidavit, suitable for filing under seal upon the Court's request, attesting that agreed upon security-related measures have been implemented on or before and up to the date of the Preliminary Approval Order and identifying the approximate cost of those security-related measures. Costs associated with these security-related measures will be paid by Defendant separate and apart from other settlement benefits, and not from the Settlement Fund. SA ¶ 75. These additional security measures will substantially enhance the protection of the Settlement Class Members' PII stored by IWP and inure to the direct benefit of the Settlement Class, whose PII might remain in IWP's computer systems.

### 6. Notice, Claims Process, and Settlement Administration

The Notice program was structured to apprise Settlement Class Members of the Settlement and their respective rights, in compliance with the requirements of Rule 23(e) and due process. The details of the Notice program are discussed in Section VI, *infra*.

### 7.   Attorneys' Fees, Expenses, and Service Awards

The Settlement Agreement contemplates that Class Counsel may file a Fee Petition for an award of attorneys' fees and Litigation Costs and expenses to be paid from the Settlement Fund in the following amounts: (i) attorney's fees in an amount not to exceed one-third (1/3) of the Settlement Fund (SA ¶ 96); (ii) reimbursement of litigation costs and expenses not to exceed twenty-five thousand dollars ($25,000.00) (SA ¶ 96); and Service Awards to Class Representatives in the amount of five thousand dollars ($5,000.00) each (SA ¶ 94), all subject to Court approval. Notably, the approval of any attorneys' fees, reimbursement of costs and expenses, and Service Awards shall have no effect on the remaining terms of the Settlement. SA ¶¶ 95, 97.

## IV.   THE PROPOSED SETTLEMENT WARRANTS PRELIMNARY APPROVAL

The Settlement is the result of vigorous litigation, the exchange of documents and other informal discovery, and extensive arm's length negotiations among the Parties with the assistance of experienced JAMS mediator, Hon. Wayne Andersen (Ret.). SA ¶ 5; Joint Decl., ¶ 9. The Settlement provides valuable benefits and monetary compensation to Class Members as well as favorable changes to Defendant's data security. The Settlement compares favorably to previous data breach settlements when weighed against the risks associated with continued litigation. Having weighed the likelihood of success and inherent risks and expense of litigation, Plaintiffs and Plaintiffs' Counsel strongly believe that the proposed settlement is "fair, reasonable, and adequate[.]" Fed. R. Civ. P. 23(e)(2); Joint Decl., ¶ 16.

### A.   Standards for Preliminary Approval

As a matter of public policy, settlement is a highly favored means of resolving disputes. *U.S. v. Comunidades Unidas Contra La Contaminacion,* 204 F.3d 275, 280 (1st Cir. 2000); *Hotel Holiday Inn de Isla Verde v. N.L.R.B.,* 723 F.2d 169, 173 (1st Cir. 1983) (settlement agreements "will be upheld wherever possible because they are a means of amicably resolving doubts and

preventing lawsuits."). This policy is especially applicable to complex class action litigation. *See, e.g., In re Lupron Mktg. and Sales Practices Litig.,* 228 F.R.D. 75, 88 (D. Mass. 2005) ("the law favors class action settlements."); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liability Litig.,* 55 F.3d 768, 784 (3d Cir. 1995) ("The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.").

Class action settlements must be approved by the Court. Fed. R. Civ. P. 23(e). At the preliminary approval stage the Court need only make an initial fairness evaluation that the Settlement is "within the range of possible approval." *Manual for Complex Litigation*, Third, § 30.41 (1995). "If so, the final decision on approval is made after the [final] hearing." *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 57 (D. Mass. 2005).

Federal Rule of Civil Procedure 23(e)(2), sets forth the following factors the court must consider in determining if the class action settlement is "fair, reasonable, and adequate":

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

*See Jean-Pierre v. J&L Cable TV Servs., Inc.*, 538 F. Supp. 3d 208, 212–13 (D. Mass. 2021).[2]

---

[2] Note, prior to the 2018 amendment to the Federal Rules of Civil Procedure district courts in the First Circuit considered a variety of factors to determine if a class action settlement was fair, adequate, and reasonable. *See In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 206 (D. Me. 2003), judgment entered, No. MDL 1361, 2003 WL 21685581 (D. Me. July 18, 2003) ("[T]he appellate courts consider some or all of the following factors: (1) comparison of the proposed settlement with the likely result of litigation; (2) reaction of the class to the settlement; (3) stage of the litigation and the amount of discovery completed; (4) quality of

As explained below, the proposed settlement is well within the range of reasonableness and meets the criteria identified by Rule 23(e).

### B.  The Rule 23(e) Factors Are Satisfied

> **1.  Rule 23(e)(2)(A) – Class Representatives and Class Counsel Adequately Represented the Class**

The first factor the Court considers when reviewing a class action settlement is the adequacy of Class Counsel and the class representatives. Proposed Class Counsel satisfy their duty to provide adequate representation by prosecuting the case "competently and vigorously…without conflicts of interest with the class." *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 36 n.12 (1st Cir. 2009).  On the other hand, class representatives must, at a minimum, have: (1) "the ability and incentive to represents the interests of the class vigorously," (2) "obtained adequate counsel," and (3) no "conflict between [his or her] claims and those asserted on behalf of the

---

counsel; (5) conduct of the negotiations; and (6) prospects of the case, including risk, complexity, expense and duration."); *Roberts v. TJX Companies, Inc.*, No. 13-CV-13142-ADB, 2016 WL 8677312, at *6 (D. Mass. Sept. 30, 2016) (applying the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) (The *Grinnell* factors are "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation."); *In re Relafen Antitrust Litig.*, 231 F.R.D. at 72 (recognizing there is "no single test in the First Circuit for determining the fairness, reasonableness, and adequacy of a proposed class action settlement" and noting courts have used both the *Compact Disc* factors and *Grinnell* factors.); *but see In re Ranbaxy Generic Drug Application Antitrust Litig.*, No. 19-MD-02878-NMG, 2022 WL 4329646, at *2 (D. Mass. Sept. 19, 2022) (noting both the Rule 23(e) factors and the *Grinnell* factors after the 2018 amendment to the Federal Rules of Civil Procedure). Plaintiffs only address those factors enumerated in Rule 23(e) in the interest of brevity.

class." *Jean-Pierre*, 538 F. Supp. 3d at 212 (citing *Ark. Teacher Ret. Sys. v. State St. Bank & Tr. Co.*, 404 F. Supp. 3d 486, 508 (D. Mass. 2018).

Proposed Class Counsel are highly experienced class action litigators who have, and will continue to, vigorously prosecute the interests of the Class Members. *See* Joint Decl., ¶¶ 23-46 and Exhibits A and B (attached thereto). Indeed, proposed Class Counsel have vigorously litigated the Action to date, including: (i) conducting a thorough pre-suit investigation that resulted in the preparation of a detailed complaint; (ii) gathering Plaintiffs' documents and relevant information; (iii) filing the complaint; (iv) briefing the motion to dismiss; (v) filing, briefing, and arguing the appeal to the First Circuit; (vi) briefing the renewed motion to dismiss; (vii) commencing formal discovery; (viii) requesting and reviewing relevant informal discovery; (viii) preparing for formal mediation, including a the preparation of a fulsome mediation statement; (ix) participating in a day-long formal mediation overseen by Judge Andersen; (x) engaging in extensive post-mediation settlement discussions; and (xi) achieving a very favorable Settlement on behalf of the Settlement Class. Joint Decl., ¶ 12. Additionally, Class Counsel have no conflicts of interest with the Class. Thus, there is no reason to doubt proposed Class Counsel's adequacy.

Not only have Proposed Class Counsel adequately represented the Class, but so have Plaintiffs as class representatives. Here, the proposed Class Representatives do not have antagonistic or competing interests with unnamed members of the Class. The named Plaintiffs and the Class Members share the identical objectives of establishing liability and obtaining damages. There are no conflicts between the Class representatives and the Settlement Class, meaning the representatives provide adequate representation of the Class as a whole.

Based on the foregoing, this factor supports preliminary approval of the settlement.

### 2.   Rule 23(e)(2)(A) – The Settlement was Negotiated at Arm's-Length

The next factor examines the negotiation process. "A settlement is presumed to be reasonable when it is achieved by arm's length negotiations conducted by experienced counsel." *Nat'l Ass'n of Deaf v. Massachusetts Inst. of Tech.*, No. 3:15-CV-30024-KAR, 2020 WL 1495903, at *4 (D. Mass. Mar. 27, 2020) (citation omitted).

The Settlement here is the product of extensive arm's-length negotiations conducted by experienced counsel and a well-respected mediator, all of whom are knowledgeable in complex consumer class actions, especially data breach class actions. Joint Decl., ¶¶ 23-46. The Settlement reflects the progress of months of negotiations, the preparation and review of detailed mediation statements and other pre-mediation materials, and the review of relevant informal discovery. Joint Decl., ¶ 9.  The Parties were only able to reach the Settlement after a full-day mediation session and continuing post-mediation negotiations with Judge Andersen, who has considerable experience mediating data breach class settlements. Joint Decl., ¶¶  9-11. During the mediation and in the subsequent discussions, the Parties engaged in adversarial, arms-length negotiations to reach agreement on the final terms of the Settlement. Joint Decl., ¶ 12.

Because of Class Counsel's considerable experience in handling consumer class actions, including data breach class actions, they were capable of assessing the strengths and weaknesses of this case. *See* Joint Decl., ¶ 17.  The experience of the attorneys involved demonstrates the Settlement Class Members were well-represented at the bargaining table. Indeed, it is Class Counsel's opinion that the relief provided to the Settlement Class is a favorable result. Joint Decl., ¶ 20.  Accordingly, as this Court has held, "[w]hen the parties' attorneys are experienced and knowledgeable about the facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight."

*Rolland v. Cellucci*, 191 F.R.D. 3, 10 (D. Mass. 2000). Thus, this factor tips in favor of preliminary approval of the settlement.

### 3. Rule 23(e)(2)(C) – The Relief Provided is Adequate

#### a. *Rule 23(e)(2)(C)(i) – Costs, Risks, and Delay of Trial and Appeal*

In the absence of a settlement, Plaintiffs would have faced "a significant element of risk." *In re Lupron*, 228 F.R.D. at 97. "Data breach" actions "are particularly risky, expensive, and complex." *Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019). "Beyond the novel state of the law in regards to identity theft, there are inherent issues of causation" that would have resulted in protracted and uncertain litigation. *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2010 WL 3341200, at *4 (W.D. Ky. Aug. 23, 2010); *Koenig v. Lime Crime, Inc.*, No. CV 16-503 PSG (JEMx), 2018 WL 11358228, at *3 (C.D. Cal. Apr. 2, 2018) (approving data breach settlement and finding in part that "[b]ecause of the difficulty of proving damages and causation, Plaintiffs faced a substantial risk of losing at summary judgment or at trial."); *In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-MD-02583-TWT, 2016 WL 6902351, at *5 (N.D. Ga. Aug. 23, 2016) ("[E]stablishing causation . . . has been a barrier to consumer plaintiffs' success" in data breach litigation); *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, No. 3:15-MD- 2633-SI, 2019 WL 3410382, at *21 (D. Or. July 29, 2019) (granting preliminary approval, recognizing "Plaintiffs have a weaker case with respect to damages . . . and the number of Class Members who appear to have suffered actual identity theft or out-of-pocket damages that can reasonably be attributed to the Data Breach appears to be relatively low.").

The $1,075,000.00 Settlement Fund and the categories of benefits achieved in this case represent a very favorable result for the Settlement Class Members. Those who submit a valid

Claim Form have the opportunity to receive *both* of the following benefits, as applicable: reimbursement of documented Unreimbursed Economic Losses up to $5,000.00; Credit Monitoring Services; and pro rata cash payments estimated to be not less than $50. SA ¶¶ 60(i), 60(ii), 60 (iii). These Settlement benefits compare very favorably to those of other data breach class action settlements that have been court approved. *See, e.g., Kondo et al. v. Creative Services, Inc.*, Case No. 1:22-cv-10438-DJC (D. Mass.)(ECF Nos. 27-1 and 39 (granting final approval of data breach settlement with benefits of up to $3000 of out-of-pocket losses, 2-years of identity theft protections, but no cash payments). Additionally, all Settlement Class Members will benefit from the cybersecurity improvements Defendant has enacted in light of the data breach and this litigation. SA ¶ 75.

Here, the Settlement provides for a $1,075,000.00 non-reversionary common fund for the 131,000 Settlement Class Members, or approximately $8.20 per Settlement Class Member. This exceeds the cash value in other exemplary data breach settlements. Comparison of a simple amount recovered per class member in other data breach settlements demonstrates that this Settlement provides an excellent recovery and is well within the range of approval:

| Case Title | Settlement Amount | No. of Class Members | $ Per Class Member |
|---|---|---|---|
| *Bingaman, et al. v. Avem Health Partners Inc.*, Case No. CIV23-130-SLP (W.D. Okla.) | $1.45M | 271,303 | $5.34 |
| *Fernandez v. 90 Degree Benefits,* No. 2:22-cv-00799 (W.D. Wis.) | $990,000 | 185,461 | $5.33 |
| *Kesner, et al. v. UMass Memorial Health Care, Inc.*, No. 2185-cv-01210 (Mass. Supp. Ct.) | $1.25M | 209,047 | $5.74 |
| *In re C.R. England, Inc. Data Breach Litigation*, No. 2:22-cv-374-DAK (D. Utah) | $1.4M | 224,572 | $6.23 |

| | | | |
|---|---|---|---|
| *Reynolds v. Marymount Manhattan College*, No. 1:22-cv-06846 (S.D.N.Y.) | $1.3M | 191,752 | $6.78 |
| *Kondo et al. v. Creative Services, Inc.*, Case No. 1:22-cv-10438-DJC (D. Mass.) | $1.2M | 164,000 | $7.27 |
| *Julien v. Cash Express, LLC*  No. 2022-CV-221 (Putnam Cty., Tenn.) | $850,000 | 106,000 | $8.02 |

Moreover, the outstanding benefits made available under the Settlement would not be guaranteed if facing trial. Indeed, absent the instant Settlement, Plaintiffs would have had to survive numerous motions by Defendant (beyond those already filed by Defendant and decided by this Court), prevail at trial, and secure an affirmance of their victory on appeal in order to recover damages. Moreover, they would also need to certify and maintain the Class, over IWP's likely opposition. All while facing the rising costs of litigation. Instead, the Parties were able to craft a settlement providing substantial monetary benefits to the Settlement Class, while avoiding the expense and delay of continued litigation. Joint Decl., ¶ 19. The Court's acceptance and approval of the Settlement Agreement is preferable in comparison to the continuation of lengthy and expensive litigation with uncertain results. For the reasons discussed, this factor also weighs in favor of preliminary approval of the settlement.

### b. Rule 23(e)(2)(C)(ii) – Effectiveness of the Proposed Method of Distributing Relief

Pursuant to Rule 23(e)(2)(C)(ii), the Court should consider the effectiveness of the parties' "proposed method of distributing relief to the class, including the method of processing class member claims."

The plan of allocation here is straightforward and the result of extensive negotiation between highly competent counsel, with the input of an experienced and well-respected mediator. As set forth above, the Settlement makes available to *all* Settlement Class Members two forms of

13

monetary relief: (i) reimbursement for document Economic Losses; (ii) Credit Monitoring Services; and (iii) cash payments. SA ¶¶ 60(i), 60(ii), 60(iii). Finally, the Settlement provides for verification of meaningful data security enhancements to better protect the PII of the Settlement Class. SA ¶ 75. All claims will be processed by the Settlement Administrator, who will determine the validity of all claims.

### c.   *Rule 23(e)(2)(c)(iii) – Attorney's Fees*

The proposed amount of attorney's fees is reasonable and fair. Plaintiffs will seek Court approval of attorneys' fees not to exceed one-third (1/3) of the Settlement Fund ($358,333.33) and Litigation expenses not to exceed twenty-five thousand dollars ($25,000.00) SA ¶ 96. This request is within the range of approvable. *See In re Neurontin Mktg. & Sales Practices Litig*., No. 04-cv-10981-PBS, 2014 WL 5810625, at *3 (D. Mass. Nov. 10, 2014) ("[N]early two-thirds of class action fee awards based on the percentage method were between 25% and 35% of the common fund."); *see also Mazola v. May Dep't Stores Co.,* No. 97 Civ. 10872, 1999 WL 1261312, at *4 (D. Mass. Jan. 27, 1999) ("[I]n this circuit, percentage fee awards range from 20% to 35% of the fund. This approach mirrors that taken by the federal courts in other jurisdictions."). While Plaintiffs will fully brief their fee request by separate motion, the attorneys' fees, expenses, and service awards sought do not present a barrier to preliminary approval.

### d.   *Rule 23(e)(2)(C)(iv) – Agreements Required to be Identified under Rule 23(e)(3)*

Next, the Court should consider whether there are any other agreements "required to be identified under Rule 23(e)(3)[.]" Fed. R. Civ. P. 23(e)(2)(C)(iv). There are no additional agreements. As such, this factor supports preliminary approval.

#### 4.   Rule 23(e)(2)(D) - Class Members Are Treated Equitably

The final Rule 23(e)(2) inquiry is whether the Settlement Agreement "treats class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2)(D).

The proposed Settlement is a common fund settlement, without any preferential treatment of the named Plaintiffs or any segments of the Class. With this proposed Settlement, Settlement Class Members are able to recover damages for injuries caused by the Data Incident and cash payment. *See* SA ¶¶ 60(i), 60(ii), 60 (iii). In satisfaction of Rule 23(e)(2)(D), the reimbursement for document Economic Loss and cash payments allows Settlement Class Members to obtain relief based upon the specific types of damages they incurred and treats every claimant in those categories equally relative to each other.

Class Counsel also intend to apply for Service Awards for Plaintiffs. SA ¶ 94. Courts have held that it is appropriate to make modest payment in recognition of the services that such plaintiffs perform in successful class action litigation. *See, e.g., Bray. v. GameStop Corp.*, No. 17-CV-01365, ECF No. 54 (D. Del. Dec. 19, 2018) ($3,750 per class representative); *Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-CV-01415, ECF Nos. 128-29 (D. Colo. Dec. 16, 2019) ($2,500 per class representative); *Weiss v. Arby's Restaurant Grp. Inc.*, No. 17-cv-01035, ECF No. 190 (N.D. Ga. June 6, 2019) ($4,500 per class representative); *Torres v. Wendy's Int'l LLC*, No. 6:16-cv-00210, ECF No. 157 (M.D. Fla. Feb. 26, 2019) ($5,000 per class representative). A service award to the Representative Plaintiffs is appropriate here given the efforts and participation of Plaintiffs in the litigation (including serving as the named appellants in a high-profile First Circuit appeal) and does not constitute preferential treatment. *See In re Relafen Antitrust Litig.*, 231 F.R.D. at 82 ("Because a named plaintiff is an essential ingredient of any class action, an incentive award can be appropriate to encourage or induce an individual to participate in the suit."). Thus, all of the Rule 23(e) factors supports preliminary approval.

## V.   THE SETTLEMENT CLASS SHOULD BE CERTIFIED

### A.  The Rule 23(a) Factors Are Met

#### 1.   The Class Is Sufficiently Numerous

Numerosity is met if "the class is so numerous that joinder of all members is impracticable[.]" Fed. R. Civ. P. 23(a)(1). Numerosity is satisfied here because Defendant's records indicate that there are approximately 131,000 Settlement Class Members.

#### 2.   Questions of Law or Fact are Common to the Class

Class certification requires there to be "questions of law or fact common to the class[.]" Fed. R. Civ. P. 23(a)(2). Commonality is a low hurdle, and class members need not present factual or legal situations that are "precisely identical." *S. States Police Benevolent Ass'n, Inc. v. First Choice Armor & Equip., Inc.*, 241 F.R.D. 85, 87 (D. Mass. 2007).

Here, there are numerous issues of fact and law common to the Settlement Class, including, *inter alia*, whether: (a) Defendant had a duty to safeguard the Settlement Class Members' PII; (b) Defendant was negligent in maintaining adequate data security protocols; and (c) the Settlement Class Members were injured by having their PII potentially accessed by unauthorized parties while on Defendant's systems. *See In re Brinker Data Incident Litig.*, No. 3:18-cv-686-TJC-MCR, 2021 WL 1405508, at *8 (M.D. Fla. Apr. 14, 2021) (finding these issues common to the class).

#### 3.   Plaintiffs' Claims Are Typical

Rule 23(a)(3) is satisfied when the plaintiffs' "injuries arise from the same events or course of conduct as do the injuries of the class and when plaintiff[s'] claims and those of the class are based on the same legal theory." *In re Credit Suisse-AOL Sec. Litig.*, 253 F.R.D. 17, 23 (D. Mass. 2008). Here, each Plaintiff's and Settlement Class Member's claims and legal arguments arise out of the same series of events – the Data Incident, which exposed their PII. Typicality is satisfied.

### 4. Plaintiffs Will Fairly and Adequately Protect the Class

Rule 23(a) also requires that the representative plaintiffs "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This inquiry has two components: "First, there must be an absence of potential conflict between the named plaintiff and the potential class members, and second, the counsel chosen by the class representative must be qualified, experienced, and able to vigorously conduct the proposed litigation." *Glass Dimensions, Inc. v. State St. Bank & Tr. Co.*, 285 F.R.D. 169, 179 (D. Mass. 2012).

The adequacy requirement is met here. Plaintiffs' interests are consistent with, and not antagonistic to, the interests of other Settlement Class Members. *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985) (finding the adequacy requirement satisfied when "the interests of the representative party will not conflict with the interests of any of the class members"). Indeed, Plaintiffs and Class Members all share the same objectives, factual and legal positions, and interest in establishing Defendants' liability. Additionally, Plaintiffs have retained qualified and competent counsel, whose adequacy is discussed in greater detail above. *See* Section IV(B)(1), *infra*; Joint Decl., ¶¶ 23-46 and Exhibits A and B attached thereto.

### B. The Settlement Class Satisfies Rule 23(b)(3)

A class meets the certification requirements of Rule 23(b)(3) when it meets two criteria. First, common questions of law or fact must "predominate" over any purely individual questions. Fed. R. Civ. P. 23(b)(3). Second, class treatment should be superior to other available methods for the fair and efficient adjudication of the controversy. *See id*.

### 1. Common Questions Predominate

Predominance requires that "questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen, Inc. v. Conn. Retirement Plans and Trust Funds*, 568 U.S. 455, 459 (2013).

Here, as noted above, the common factual and legal questions presented include whether: (i) Defendant had a duty to safeguard the Settlement Class Members' PII; (ii) Defendant was negligent in maintaining adequate data security protocols; and (iii) the Settlement Class Members were injured by having their PII potentially accessed by unauthorized parties while on Defendant's systems. These common issues predominate over individual ones.[3]

### 2.   The Class Is the Superior Method of Adjudication

Finally, certification of this Settlement as a class action is superior to other methods available to fairly, adequately, and efficiently resolve the claims of the Settlement Class.

Here, the proposed Settlement Class is comprised of approximately 131,000 individuals and, if each were to pursue their claims against IWP individually, they would each need to provide nearly the same, if not identical, legal and factual arguments and evidence. Allowing this case to move forward as a class action would: (i) avoid congesting a court with the need to repetitively adjudicate such actions; (ii) prevent the possibility of inconsistent results; and (iii) allow class members an opportunity for redress they might otherwise be denied. Accordingly, this class settlement is the superior method for adjudicating the claims of the Class. *See Smilow v. Southwestern Bell Mobile Sys., Inc.*, 323 F.3d 32, 41-42 (1st Cir. 2003) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide

---

[3] *See, e.g.*, *In re Heartland Payment Sys., Inc. Cust. Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1059 (S.D. Tex. 2012) (finding predominance satisfied in data breach case); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 312–15 (N.D. Cal. Aug. 15, 2018) (finding predominance was satisfied because "Plaintiffs' case for liability depend[ed], first and foremost, on whether [the defendant] used reasonable data security to protect Plaintiffs' personal information," such that "the claims rise or fall on whether [the defendant] properly secured the stolen personal information," and that these issues predominated over potential individual issues); *In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016) (finding common predominating questions included whether Home Depot failed to reasonably protect class members' personal and financial information, whether it had a legal duty to do so, and whether it failed to timely notify class members of the data breach).

the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating" relatively small potential recoveries).

## VI.   THE PROPOSED NOTICE PROGRAM SHOULD BE APPROVED

In addition to approving the proposed Settlement, the Court should also approve the proposed means of notifying Settlement Class Members. Fed. R. Civ. P. 23(c)(2). Due process and Rule 23(e) do not require that each Class Member receive notice, but rather, that class notice be "reasonably calculated ... to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank and Trust Co*., 339 U.S. 306, 314 (1950). "Individual notice must be provided to those class members who are identifiable through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175 (1974).

Here, the Notice program is designed to reach as many Settlement Class Members as possible through direct notice. First, no later than seven (7) days after entry of the Preliminary Approval Order, IWP will provide the Settlement Administrator with the name and last known physical address of each Settlement Class Member. SA ¶ 76. Next, within thirty (30) days after the entry of the Preliminary Approval Order the Settlement Administrator will provide the Short Notice to all Settlement Class Members via US mail, to the extent mailing addresses are known. *Id*. To the extent that Class Counsel believes that reminder notices should be sent to Settlement Class Members, Class Counsel may direct the Settlement Administrator to send reminder notices to Settlement Class Members, which shall be sent sixty (60) days after the Notice Date and the cost of which shall be Notice and Administrative Expenses that are paid from the Settlement Fund. *Id*.

The Settlement Administrator will also establish a Settlement Website that will allow Settlement Class Members to submit Claim Forms online and will allow them to view and download the Long Notice, the Preliminary Approval Order, the Settlement Agreement, and the operative

Complaint. SA ¶ 52. This is in addition to a toll-free help line that will also be made available to Settlement Class Members to provide them with additional information about the settlement.

Settlement Class Members who do not wish to participate in the settlement may opt-out of the settlement by mailing written notice to the Settlement Administrator no later than sixty (60) days after the Notice Date. SA ¶ 78. Additionally, Settlement Class Members may object to the Settlement by submitting a valid written objection no later than sixty (60) days from the Notice Date. SA ¶ 79.

The proposed Notices are plain and easily understood. The Notices describe the claims, the relief provided under the Settlement, and Settlement Class Members' rights and options, including the deadlines and means of submitting a Claim Form (Exhibit C to the Settlement Agreement), objecting, and/or appearing at the Final Approval Hearing.  *See* SA, at Exhibits A and B. Plaintiffs submit that the Notice Program is reasonable and provides the best notice practicable under the circumstances. *Hill v. State Street Corp.*, 2015 WL 127728, at *15 (D. Mass. Jan. 8, 2015) (quoting *Greenspun v. Bogan*, 492 F.2d 375, 382 (1st Cir. 1974) ("The Notice is clearly reasonable as it 'fairly apprise[s] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them.'") (internal citations omitted).

## VII.    CONCLUSION

For the reasons stated herein, Plaintiffs respectfully request that the Court grant their Motion for Preliminary Approval and enter an order substantially similar to the proposed Preliminary Approval Order, attached as Exhibit D to the Settlement Agreement.

Dated: August 2, 2024

Respectfully submitted,

*s/ David K. Lietz*

David K. Lietz (admitted *pro hac vice*)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
5335 Wisconsin Avenue NW, Suite 440
Washington, D.C. 20015-2052
Telephone: (866) 252-0878
Facsimile: (202) 686-2877
dlietz@milberg.com

Raina C. Borrelli (admiited *pro hac vice*)
**STRAUSS BORELLI PLLC**
One Magnificent Mile
980 N Michigan Ave., Suite 1610
Chicago, IL 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
Email: raina@straussborrelli.com

Randi Kassan
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
100 Garden City Plaza, Suite 500
Garden City, NY 11530
Telephone: (212) 594-5300
rkassan@milberg.com

*Attorneys for Plaintiffs and the Proposed Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 2, 2024, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF. Copies of the foregoing document will be served upon interested counsel via transmission of Notices of Electronic Filing generated by CM/ECF.

*s/ David K. Lietz*