UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

ALEXSIS WEBB and MARSCLETTE
CHARLEY, on behalf of themselves and all
others similarly situated,

                Plaintiffs,

v.

INJURED WORKERS PHARMACY, LLC,

                Defendant.

Case No. 1:22-cv-10797-RGS

Judge Richard G. Stearns

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS**

Pursuant to Federal Rule of Civil Procedure 23(h) and 54(d), Plaintiffs Alexsis Webb and Marsclette Charley ("Plaintiffs"), individually and on behalf of the putative class, submit this Memorandum of Law in Support of Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards (the "Motion").

## I. INTRODUCTION

This class action lawsuit arises out of a January 2021 Data Incident where it is alleged that certain personally identifiable information ("PII") and personal health information ("PHI") of Defendant Injured Workers Pharmacy, LLC's ("IWP") current and former customers was exposed.. The Parties engaged in hard fought litigation that included a successful appeal by Plaintiffs to the United States Court of Appeals for the First Circuit, coordination of the various Plaintiffs, substantial formal and informal discovery, and then considerable efforts to settle this case, including mediation. After protracted, arms' length settlement negotiations overseen by an experienced and well-regarded mediator (Hon. Wayne Andersen (Ret.) from JAMS.), the Parties reached a settlement that is fair, reasonable, and adequate. The Court preliminarily approved the Settlement on August 9, 2024 (ECF 54). Notice was subsequently issued to the Class, and Class Counsel now comes before the Court with their motion for attorneys' fees, expenses, and service awards.

Plaintiffs' counsel have negotiated a class settlement that provides for substantial benefits to Settlement Class members, in the form of a $1,075,000 non-reversionary common fund that will provide compensation for unreimbursed ordinary and/or extraordinary economic losses, a *pro rata* cash payment, credit monitoring, and significant injunctive relief. This Settlement represents an excellent result for the Settlement Class and was obtained against a well-funded defense by Defendant, which is represented by an extremely well-regarded and experienced national defense law firm. Although Plaintiffs believe in the merits of their claims, this litigation was inherently

1

risky and complex. Joint Declaration of Class Counsel ("Counsel Fee Decl."), attached hereto as Exhibit 1, ¶¶ 34-35. The claims involve the intricacies of data breach litigation (a fast-developing area in the law), and the Plaintiffs would face risks at each stage of litigation. *Id*. at ¶35. Against these risks, it was through the hard-fought negotiations and the skill and hard work of Settlement Class Counsel and the Class Representatives that the Settlement was achieved for the benefit of the Settlement Class. *Id.*

Plaintiffs' Counsel now respectfully move this Court for an award of attorneys' fees in the amount of $358,333.33, which represents one-third (33%) of the Settlement Fund and a modest lodestar multiplier of about 1.16. This fee request is contemplated by the Settlement Agreement, and Settlement Class Counsel apprised the Court of this request in its Motion for Preliminary Approval on August 2, 2024. S.A. ¶ 96; (ECF 53). This fee request was also clearly delineated in the Long Form Notice to the Settlement Class (ECF 53-1, Ex. B), which is posted prominently on the Settlement website. Yet as of June 12, 2023, no Class Member has objected to the Settlement or the requested attorneys' fees. Counsel Fee Decl. ¶ 5.

When applying the relevant factors and standards, this request falls well within the range of reasonableness. Class Counsel's fee and expense request is fair and reasonable under both a percentage of the fund approach and a lodestar approach. In addition to the attorneys' fees, Plaintiffs' Counsel also seeks an award of reasonable out-of-pocket case expenses in the amount of $21,961.70. Plaintiffs also seek service awards for the Class Representatives in the amount of $5,000 each, for the Plaintiffs' efforts on behalf of the Settlement Class.

| II. | **INCORPORATION BY REFERENCE** |

In the interest of judicial efficiency, for factual and procedural background on this case, Plaintiffs refer this Court to, and hereby incorporate, Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement filed on August 2, 2024 (ECF 53) ("MPA") and the

accompanying Exhibits, including the proposed Settlement Agreement ("SA"), filed in conjunction therewith.

## III. SUMMARY OF THE SETTLEMENT

As explained previously in the MPA, the Settlement provides for substantial relief to a large class of persons impacted by the Data Incident.

### A. Definition of the Class

The Settlement Class is comprised of approximately 131,000 individuals. MPA at 3. The proposed Settlement Class is defined as follows:

> All individuals residing in the United States for whom Defendant has contact information and/or identifying information, such as date of birth or Social Security number, whose Personal Information was potentially compromised in the Data Incident disclosed by Injured Workers Pharmacy in February 2022. *Id.*; SA, ¶ 2.47.

The Settlement Class specifically excludes: (1) the judges presiding over this Action, and members of their direct families; (2) the Defendant, their subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or their parents have a controlling interest, and their current or former officers and directors; and (3) Settlement Class Members who submit a valid Request for Exclusion prior to the Opt-Out Deadline. SA ¶ 47.

### B. The Settlement Terms and Benefits to the Settlement Class

#### 1. Settlement Fund

IWP will make available to the Settlement Class a generous non-reversionary Settlement Fund of $1,075,000. SA, ¶¶ 2.50, 3.56. The Settlement Fund will be used to pay for the following: (1) reimbursement for Unreimbursed Economic Losses; (2) Credit Monitoring Services; (3) Pro Rata Cash Payments; (4) Notice and Administrative Expenses; (5) Service Award payments approved by the Court; and (6) the Attorney Fee Award and Expenses awarded by the Court. SA, ¶ 3.59. IWP has confirmed that it has made certain changes to its information security and costs

3

associated with these security-related measures will be paid by IPW separate and apart from other settlement benefits and separate and apart from the Settlement Fund. SA, ¶ 5.75.

### 2. Identity Theft Protection and Credit Monitoring Package

All Settlement Class Members who submit a Valid Claim Form are eligible to receive two (2) years of one bureau credit monitoring and identity theft protection services, with identity-theft insurance.  SA, ¶¶ 1.17, 4.61(i).

### 3. Cash Payments

In addition to the Identity Theft Protection and Credit Monitoring, the Settlement provides the following fair and reasonable cash payments to eligible Settlement Class Members:

<u>Compensation for Unreimbursed Economic Losses</u>: The Settlement Fund will provide compensation, up to a total of $5,000.00 per person who is a Participating Settlement Class Member, for unreimbursed ordinary and/or extraordinary economic losses incurred as a result of the Data Incident. SA, ¶ 4.61(ii). To receive this reimbursement, Participating Settlement Class Members with ordinary and/or extraordinary economic losses must submit documentation supporting their claims, such as receipts or other documentation not "self-prepared" by the claimant that document the costs incurred. *Id*.

<u>*Pro Rata* Cash Payment</u>: Settlement Class Members can elect to make a claim for a *pro rata* share of the Net Settlement Fund, less all valid claims for Unreimbursed Losses. SA, ¶ 4.61(iii). To receive this benefit, Participating Settlement Class Members must submit a valid claim form, but no documentation is required to make a claim. *Id*. The amount of the Cash Payments will be increased or decreased on a *pro rata* basis, depending upon the number of valid claims filed and the amount of funds available for these payments. *Id*. Class Counsel predicts the value of *pro rata* payments will exceed $50 per valid claimant. *Id*.

### 4. Additional Security Measures

The Settlement also provides that Plaintiffs have received assurances that IWP has implemented certain reasonable steps to adequately secure its systems and environments. SA, ¶ 5.75. IPW will pay costs associated with these security-related measures separate and apart from the Settlement Fund. *Id*.

### 5. Notice, Claims Process, and Settlement Administration

The Notice program was structured to apprise Settlement Class Members of the Settlement and their respective rights, in compliance with the requirements of Rule 23(e) and due process. The costs of notice and claims administration will also be paid from the Settlement Fund.

### 6. Preliminary Approval and Notice

Plaintiffs filed their Unopposed Motion for Preliminary Approval on August 8, 2024 (ECF 52) and the Court granted preliminary approval on August 9, 2024. (ECF 54). Settlement Class Counsel, along with the Settlement Administrator, Eisner Amper, finalized the notice documents and settlement website, and issued notice on September 8, 2024.  Counsel Fee Decl. ¶4; (ECF 55). The objection and opt-out deadlines are on November 7, 2024, the final approval motion is due January 2, 2025, the claim deadline is November 26, 2024, and the final approval hearing is January 16, 2025. (ECF 55). Zero objections or opt outs have been submitted to-date. Counsel Fee Decl. ¶ 4.

## IV. ARGMENT

The requested attorney's fees are reasonable and fair. Plaintiffs seek Court approval of attorneys' fees of one-third (approximately 33.33%) of the Settlement Fund ($358,333.33) and Litigation expenses of $21,961.70. This request is within the range of fee requests that have been approved in this judicial district. *See In re Neurontin Mktg. & Sales Practices Litig.*, No. 04-cv-

10981-PBS, 2014 WL 5810625, at *3 (D. Mass. Nov. 10, 2014) ("[N]early two-thirds of class action fee awards based on the percentage method were between 25% and 35% of the common fund."); *see also Mazola v. May Dep't Stores Co.,* No. 97 Civ. 10872, 1999 WL 1261312, at *4 (D. Mass. Jan. 27, 1999) ("[I]n this circuit, percentage fee awards range from 20% to 35% of the fund. This approach mirrors that taken by the federal courts in other jurisdictions."). As Plaintiffs will demonstrate, the request should be approved here.

   **1. The Court Should Approve a Fee Award from the Settlement Fund.**

The right of Class Counsel to be paid from a settlement fund derives from the long-accepted principal that "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The First Circuit has held that in contingent fee cases, the "percentage of the fund" approach is appropriate because it is easy to administer, reduces the possibilities of collateral disputes, enhances judicial efficiency, is less taxing on judicial resources and "better approximates the workings of the marketplace." *In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir. 1995) (approving the percentage of fund approach as an acceptable method and recognizing "that use of the [percentage of fund] method in common fund cases is the prevailing praxis [with] ... distinct advantages"); *Bussie v. Allamerica Financial Corp.,* 1999 WL 342042 (D. Mass. May 19, 1999) (Gorton, J.) (unreported opinion); *see In re Centennial Techs. Litig.,* 20 F.Supp.2d 119 (D.Mass.1997) (Keeton, J.).

   **2. The Requested Fee of One-Third of the Net Settlement Fund is Fair and Reasonable.**

In this Court and in the First Circuit, an award of one-third the common fund has been held to be appropriate in class action cases, including cases where settlement administration expenses have not been removed from the total common fund analysis. *See, e.g. Dahl, et al. v. Bain Capital*

6

*Partners, LLC, et al*., 07-cv-12388-WGY (D. Mass. Feb. 2, 2015) (awarding 33 1/3 percent of Settlement Fund) (Dkt. 1095); *In re Loestrin 24 Fe Antitrust Litig*., 1:13-md-2472- WES-PAS, 2020 WL 4035125 at *4-5 (D.R.I. July 17, 2020) report and recommendation adopted, No. 1:13-md-2472-WES-PAS, ECF No. 1462 (D.R.I. Sept. 1, 2020) (awarding 1/3 of fund); *In re Relafen Antitrust Litig*., 231 F.R.D. 52, 77-82 (D. Mass. 2005) (approving 1/3 fee award).

As the court explained in *Relafen*, "[t]he First Circuit has not endorsed a specified set of factors to be used in determining whether a fee request is reasonable" but noted that factors bearing on the reasonableness of a fee request include:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*Relafen*, 231 F.R.D. at 79 (citing *Gunter v. Ridgewood Energy Corp*., 223 F.3d 190, 195 n.1 (3rd Cir. 2000)). This Court further said that "although not controlling precedent, the listed factors are helpful in framing the Court's analysis." *Id*. Class Counsel employs those factors here and as shown below, they strongly support the requested one-third fee as appropriate, fair and reasonable.

**A. The Size of the Fund Created and Number of Persons Benefitted**.

This Settlement creates a $1,075,000 non-reversionary common fund that will benefit approximately 131,000 Settlement Class Members. This equates to a per capita amount of $8.20 per Settlement Class Member, a number that meets or far exceeds a score of other data breach settlements, including those cited in the Memorandum in Support of the Unopposed Motion for Preliminary Approval. ECF 53 at pages 12-13*; see also, e.g. Fehlen v. Accellion, Inc.*, Case No. 21-cv-01353 (N.D. Cal.) (settlement of $8.1 million for 9.2 million class members who had their Social Security Numbers compromised; $0.90 per class member); *Dickey's Barbeque Restaurants, Inc.*, Case No. 20-cv-3424 (N.D. Tex.), Dkt. 62 (data breach class action involving more than 3

7

million people that settled for $2.3 million, or $0.76 per person); *In re: Capital One Consumer Data Breach Litigation*, MDL No. 1:19md2915 (AJT/JFA) Doc. 2251 (Memo in Support of Final Approval), page 1 ($190 million common fund settlement for a class of approximately 98 million, or $1.93 per person); *Cochran v. Accellion, Inc., et al.*, No. 5:21-cv-01887-EJD (N.D. Cal.), ECF No. 32 (June 30, 2021) ($5 million settlement fund for 3.82 million class members or approximately $1.31 per Class member); *Adlouni v. UCLA Health Systems Auxiliary, et al.*, No. BC 589243 (Cal. Super. Ct. June 28, 2019) ($2 million settlement in medical information data breach for approximately 4,500,000 Class Members; 44 cents per Class Member); *In re Anthem, Inc. Data Breach Litig.*, No. 5:15-md-02617 (N.D. Cal. Aug. 15, 2018) ($115 million settlement in medical information data breach for 79,200,000 Class Members; $1.45 per Class Member); *In re The Home Depot, Inc. Customer Data Sec. Breach Litig.*, No. 1:14-MD02583, 2016 WL 6902351, at *7 (N.D. Ga. Aug. 23, 2016) and ECF No. 181-2 ¶¶ 22, 38 ($13 million settlement for approximately 40 million class members; 32.5 cents per Class Member); *In re Target Corp. Customer Data Sec. Breach Litig.*, MDL No. 14-2522, 2017 WL 2178306, at **1- 2 (D. Minn. May 17, 2017) ($10 million settlement for nearly 100 million Class Members; 10 cents per Class Member); *In re LinkedIn User Priv. Litig.*, 309 F.R.D. 573, 582 (N.D. Cal. 2015) ($1.25 million settlement for approximately 6.4 million Class Members; 20 cents per Class Member). Based on the size of the breach and per-capita figures, the Settlement presents a robust relief package and valuable outcome for the Settlement Class compared to other recent data breach class action settlements. Additionally, it provides relief for the types of injuries claimed by Plaintiffs and the Class, namely out-of-pocket losses, credit monitoring, and compensation for the loss of privacy. These significant benefits support the fee request.

**B. Class Counsel's Skill and Efficiency**.

Class Counsel's skill, experience and efficient lawyering helped Plaintiffs favorably settle their claims. The goal of the percentage fee-award is to ensure that competent counsel undertakes risky litigation to recover for plaintiffs who may otherwise go uncompensated. In evaluating the skill and efficiency of class counsel, courts determine whether counsel, "had a sufficient understanding of the merits of the case in order to engage in informed negotiations, particularly where plaintiffs' counsel are skilled and experienced in consumer class action litigation[.]" *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 348 (D. Mass.), aff'd, 809 F.3d 78 (1st Cir. 2015). Here, Class Counsel met that standard. This case was hotly contested, and included two motions to dismiss and a successful First Circuit appeal, all which was handled by Class Counsel in a skilled and efficient manner. Class Counsel are highly experienced in the specialized fields of consumer class actions, data breach litigation and appellate law. *See* ECF 53-3, 53-4 (listing qualifications of Class Counsel). Class Counsel's experience and qualifications support the fee request. *See Relafen*, 231 F.R.D. at 80 (observing skill of class counsel).

**C. The Complexity and Duration of the Litigation.**

This case involved complexities of data breach litigation that are novel and evolving. The highly technical aspects of the data breach mechanism (*i.e.,* the means by which Defendant's systems were breached), not to mention the knowledge of class action procedure required to achieve certification, let alone settlement, required the specialized skills and experience possessed by Class Counsel. While Plaintiffs are confident that their claims will prevail, they faced several strong legal defenses and difficulties in demonstrating causation and injury, as evidenced by Defendant's first successful motion to dismiss, and then by Defendant's partially successful second motion to dismiss. Such defenses, if successful, could drastically decrease or eliminate any recovery for Plaintiffs and putative class members. Further, given the complexity of the issues and

the amount in controversy, the defeated party would likely appeal any decision on either certification or merits. The general risks of litigation are further heightened in the data breach arena. Due at least in part to the cutting-edge nature of data protection technology and rapidly evolving law, data breach cases like this one are particularly complex and face substantial hurdles—even just to make it past the pleading stage. This case is a stark example of this complexity and risk, having failed to make it past the pleading stage initially. As one federal district court recently observed in finally approving a data breach settlement with similar class relief and similar attorneys' fees:

> Data breach litigation is evolving; there is no guarantee of the ultimate result. *See Gordon v. Chipotle Mexican Grill, Inc.,* No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases ... are particularly risky, expensive, and complex."). Plaintiffs also faced the risk that [defendant] would successfully oppose class certification, obtain summary judgment on one or more of their claims, or win at trial or on appeal. Also, the cost for [defendant] and Plaintiffs to maintain the lawsuit would be high, given the amount of documentary evidence as well as the expert costs both parties would incur in the context of class certification, summary judgment, and trial. As such, the current Settlement strikes an appropriate balance between Plaintiffs' "likelihood of success on the merits" and "the amount and form of the relief offered in the settlement." *See Carson v. Am. Brands, Inc*., 450 U.S. 79, 88 n.14 (1981).

*Fox v. Iowa Health Sys*., No. 3:18-CV-00327-JDP, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021) (also approving attorneys' fees and costs in the amount of $1,575,000); *see also Hammond v. The Bank of N.Y. Mellon Corp*., 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage). Class certification is another hurdle that would have to be met—and one that has been denied in other data breach cases. *See, e.g., In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013).

### D. The Risk of Nonpayment

The risk involved in prosecuting a class action is an important consideration in determining an appropriate fee award. This factor is intended to recognize that cases taken on a contingent fee basis entail risk of non-payment for the attorneys who prosecute them, and it embodies an

assumption that contingency work is entitled to greater compensation than non-contingency work. *In re Lupron Mktg. and Sales Practices Litig.*, 2005 WL 2006833, at *4 (D. Mass. Aug. 17, 2005) ("[m]any cases recognize that the risk assumed by an attorney is perhaps the foremost factor in determining an appropriate fee award") (internal quotation marks and citation omitted).

The risk of a class action should not be viewed in retrospect, from the standpoint of a settlement, but as it existed at the outset of the litigation. *See e.g.*, *In re Dairy Farmers of Am.*, 80 F. Supp. 3d 838, 847-48 (N.D. Ill. 2015) ("When determining the reasonableness of a fee request, courts put a fair amount of emphasis on the severity of the risk (read: financial risk) that class counsel assumed in undertaking the lawsuit."). Class Counsel took this highly complex class action case on a purely contingent basis. *See* Joint Declaration of Plaintiffs' Counsel in Support of Motion for Attorneys' Fees, Expenses, and Service Awards ("Counsel Fee Decl.") ¶¶ 6-11. As such, Class Counsel assumed significant risk of nonpayment or underpayment. *See id.* Class Counsel took on these risks knowing full well their efforts may not bear fruit. Fees were not guaranteed—the retainer agreements Class Counsel have with Plaintiffs do not provide for fees apart from those earned on a contingent basis, and in the case of class settlement, approved by the Court. *See id.*

Class Counsel labored and advanced their own funds to prosecute the case all at the risk of never being paid for their work or reimbursed for their expenses. Class Counsel devoted their time and energy to this matter, instead of pursuing other income, all at the risk of never getting paid and, at best, being paid at some point potentially many years down the road. Had Defendant prevailed on the merits, on class certification, or on appeal, Class Counsel might have recovered nothing for the time and expense they invested in representing the Settlement Class. *See id.* ¶¶ 20, 28.

**E. Class Counsel's Time Invested.**

Class Counsel's commitment of time and resources in this case supports their requested fee award. Based upon the contemporaneous time records of counsel, the following lodestar has been accrued through October 21, 2024:

| Firm | Hours to Date | Rate Range | Total Time Billed | Expenses |
|---|---|---|---|---|
| Stauss Borrelli PLLC | 202.90 | $150-$700 | $112,778.00 | $9,971.86 |
| Milberg Coleman Bryson Phillips Grossman PLLC | 249.9 | $208-$1057 | $197,416.40 | $11,989.84 |
| **TOTALS** | **452.80** | | **$310,194.40** | **$21,961.70** |

Upon request from the Court, Class Counsel will submit the detailed billing records in camera for the Court's review.

The $$310,194.40 combined lodestar of Plaintiffs' counsel is less than the $358,333.33 in attorneys' fees requested, and represents a lodestar multiplier – 1.16. Given the modest lodestar multiplier provided by the requested fee, this factor favors approval of the requested award of attorneys' fees. Moreover, the lodestar multiplier is will decrease ahead of final approval as Class Counsel continues to assist with notice and claims administration, prepares and a motion for final approval, and appear in person for the final approval hearing. The additional necessary hours accrued will lower the lodestar multiplier, perhaps even resulting in there being no multiplier at all. Courts have routinely held that a modest lodestar multiplier supports a finding of reasonableness. *See, e.g., In re Fam. Dollar Stores, Inc.*, No. 2:22-md-3032-SHL-tmp, 2024 U.S. Dist. LEXIS 97141, *12024 (E.D. Tenn. May 31, 2024) ("[c]onsidering the risk Plaintiffs' counsel took in bringing the case, a multiplier of two is appropriate."); *Lamie v. Lendingtree, LLC*, No. 3:22-CV-00307-FDW-DCK, 2024 U.S. Dist. LEXIS 33632, *3, *5 (W.D.N.C. Feb. 27, 2024) (finding a lodestar multiplier of 1.26 reasonable); *Hellyer v. Smile Brands, Inc.*, No. 8:21-cv-01886-DOC-ADSx, (C.D. Cal. Jan. 16, 2024) (finding plaintiff's multiplier of 1.44 "is conservative given the

12

results that counsel achieved and that they took the case on contingency."); *In re Ranbaxy Generic Drug Application Antitrust Litig.*, MDL No. 19-md-02878-NMG, 630 F. Supp. 3d 241, 246 (D. Mass. Sept. 19, 2022) ("[t]he typical range of the lodestar multiplier allowed by this Court is between one and 2.7.") Thus, Class Counsel's requested lodestar multiplier is within the range typically awarded by this Court and courts around the country.

**F. Awards in Similar Cases.**

Federal district courts across the country – including this Court -- have awarded similar attorneys' fees in data breach class actions involving non-reversionary common funds. *See, e.g. Kondo et al. v. Creative Services, Inc.,* Case No. 1:22-cv-10438-DJC (D. Mass.), ECF 39 (September 7, 2023) (granting final approval of non-reversionary common fund data breach settlement and attorneys' fees of 33% of $1.2 million Settlement Fund); *In re: Forefront Data Breach Litigation*, Case No. 1:21-cv-000887-LA (E.D. Wis.), ECF 81 (March 22, 2023)(granting final approval of non-reversionary common fund data breach settlement and attorneys' fees of 33.33% of the fund); *Davidson v. Healthgrades Operating Company, Inc.*, Case No. 1:21-cv-01250-RBJ (D. Col.), ECF 51 (August 22, 2022) (granting final approval of non-reversionary common fund data breach settlement and attorneys' fees of one-third of the settlement fund). As the case law from this district cited above demonstrates, fees awarded in common fund class action settlements range from 25% to 35%. The one-third (33.33%) fee sought here is squarely in line with other fee awards in this district, and in data breach cases across the country.

**G. Public Policy Considerations.**

Public policy considerations support awarding Class Counsel the requested fee award. There is a "significant societal interest" in holding defendants accountable through class action litigation. *In re Lupron*, 2005 WL 2006833, at *6. Indeed, lawsuits that curtail violative conduct on a widespread basis provide a valuable service in safeguarding "the welfare of the public." *In re*

13

*Neurontin Mktg. & Sales Practices Litig.*, 58 F. Supp. 3d 167, 171 (D. Mass. 2014). The Settlement serves an important public policy concern by protecting consumers' interests in the privacy and confidentiality of their personal information and by causing Creative Services to improve its procedures for protecting these interests. Accordingly, compensating Class Counsel appropriately for bringing this action serves this important policy goal.

### 3. Class Counsel's Expenses are Reasonable and Should Be Reimbursed.

Counsel whose efforts create a common fund to benefit a class are entitled to recover from the fund "expenses. reasonable in amount, that were necessary to bring the action to a climax." *In re Fidelity/Micron Sec. Litig.*, 167 F.3d 735, 737 (1st Cir. 1999); *In re Synthroid*, 264 F.3d 712, 722 (7th Cir. 2001). To be recoverable, the expenses must be "adequately documented and reasonably and appropriately incurred in the prosecution of the class action." *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 108 (D.N.J. 2001).

Here, Class Counsel incurred $21,961.70 in litigation expenses. *See* Counsel Fee Decl. at ¶¶ 29, 31. These expenses are well-documented, based on the firms' books and records and include, among other things, the various court filing fees, the cost of appellate litigation, and the cost of the mediator (Hon. Wayne Andersen (Ret.) from JAMS). These expenses were modest, reasonable, and necessary for the prosecution of the case. Courts routinely authorize similar expenses.

### 4. The Requested Service Awards Should Be Approved.

Plaintiffs respectfully request approval of service awards of $5,000 to each to the Class Representatives. The service awards are justified and reasonable considering the proposed recipients' individual and collective efforts. Service awards serve an important function in advancing class action suits. *In re Relafen*, 231 F.R.D. at 82 ("Because a named plaintiff is an essential ingredient of any class action, an incentive award can be appropriate to encourage or induce an individual to participate in the suit.") (citation omitted); *In re Lupron*, 2005 WL 2006833

14

at *7 ("Incentive awards serve an important function in promoting class action settlements[.]"). "In granting incentive awards to named plaintiffs in class actions, courts consider not only the efforts of the plaintiffs in pursuing the claims, but also the important public policy of fostering enforcement laws and rewarding representative plaintiffs for being instrumental in obtaining recoveries for persons other than themselves." *Bussie v. Allmerica Fin. Corp.*, 1999 WL 342042, at *3 (D. Mass. May 19, 1999).

Here, Plaintiffs agreed to serve as Class Representatives (an action that comes with the potential for public scrutiny and an impact on one's reputation) and have been actively involved in the litigation. *See* Counsel Fee Decl. ¶ 34. Plaintiffs pursued the interests of the Class by undertaking the responsibilities attendant to serving as class representatives, including, without limitation, periodically conferring with counsel, providing relevant documents and information, and reviewing pleadings and other documents in the case. *Id*. The information they provided Class Counsel was critical in determining the legal claims to be asserted, as well as whether or not there was injury-in-fact for Article III standing purposes. Accordingly, given Plaintiffs' efforts in supporting the litigation, combined with the risks and burdens of serving as class representatives, the application for a $5,000 incentive award to each Plaintiff should be granted.

## V. CONCLUSION

For the reasons stated herein, Plaintiffs' Counsel respectfully request that the Court grant their Motion for Attorneys' Fees, Expenses, and Service Awards.

Dated: October 25, 2024    By: */s/ Raina C. Borrelli*
                               Raina C. Borrelli (*pro hac vice*)
                               STRAUSS BORRELLI PLLC
                               One Magnificent Mile
                               980 N Michigan Avenue, Suite 1610
                               Chicago IL, 60611
                               Telephone: (872) 263-1100

15

Facsimile: (872) 263-1109
raina@straussborrelli.com

David K. Lietz (admitted *pro hac vice*)
MILBERG COLEMAN BRYSON PHILLIPS
GROSSMAN, PLLC
5335 Wisconsin Avenue NW, Suite 440
Washington, D.C. 20015-2052
Telephone: (866) 252-0878
Facsimile: (202) 686-2877
dlietz@milberg.com

*Attorneys for Plaintiffs and the Proposed Class*

**CERTIFICATE OF SERVICE**

I, Raina C. Borrelli, hereby certify that on October 25, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record, below, via the ECF system.

DATED this 25th day of October, 2024.

        STRAUSS BORRELLI PLLC

        By: */s/ Raina C. Borrelli*
            Raina C. Borrelli
            raina@straussborrelli.com
            STRAUSS BORRELLI PLLC
            One Magnificent Mile
            980 N Michigan Avenue, Suite 1610
            Chicago IL, 60611
            Telephone: (872) 263-1100
            Facsimile: (872) 263-1109