UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALEXSIS WEBB and MARSCLETTE CHARLEY, on behalf of themselves and all others similarly situated,<br><br>　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>INJURED WORKERS PHARMACY, LLC,<br><br>　　　　　　　　　　Defendant. | Case No. 1:22-cv-10797-RGS<br><br>Judge Richard G. Stearns |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS'
UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiffs Alexsis Webb and Marsclette Charley ("Plaintiffs"), on behalf of themselves and the Settlement Class, respectfully submit this memorandum in support of their Motion for Final Approval of Class Action Settlement.

## I. INTRODUCTION

On August 9, 2024, the Court preliminarily approved the Settlement between Plaintiffs and Defendant Injured Workers Pharmacy, LLC ("Defendant" or "IWP"). ECF 54. The Settlement provides substantial benefits to Plaintiffs and Settlement Class Members—including a $1,075,000 non-reversionary common fund (the "Settlement Fund") that provides Settlement Class Members with (1) up to $5,000 in compensation for economic losses; (2) *pro rata* cash payments; and (3) two years of credit monitoring. ECF 53-1 ("Settlement Agreement" or "S.A."), ¶ 61. Additionally, the Settlement provides substantial injunctive relief whereby Defendant implemented additional data security measures—the costs of which Defendant paid separate and apart from the Settlement Fund and other Settlement benefits. *Id.* ¶ 75.

The Settlement is an excellent result for the Settlement Class—defined as "[a]ll individuals residing in the United States for whom Defendant has contact information and/or identifying information, such as date of birth or Social Security number, whose Personal Information was potentially compromised in the Data Incident disclosed by Injured Workers Pharmacy in February 2022." *Id.* ¶ 47. Indeed, Class Counsel secured the Settlement only after years of substantial litigation—including a successful appeal by Plaintiffs to the United States Court of Appeals for the First Circuit, coordination of the various Plaintiffs, substantial formal and informal discovery, and mediation with Hon. Wayne Andersen (Ret.) from JAMS. *Id.* ¶ I (1–5).

After the Court granted preliminary approval, the Settlement Administrator EisnerAmper ("EisnerAmper"), finalized the notice documents and settlement website, and issued notice on

1

September 9, 2024. *See* Declaration of Ryan Aldridge in Support of Final Approval ("Aldridge Decl.") ¶¶ 8, 13.[1] The Claims Period ran from September 9, 2024, until December 9, 2024. *Id.* ¶ 17. The Settlement Class's reaction to the Settlement was overwhelmingly positive. *Id.* ¶¶ 18–19. Of the 132,491 Settlement Class Members, only two (2) timely requested exclusion, and zero (0) objections. *Id*. In total, EisnerAmper received 8.320 valid claims which equates to a 6.3% claims rate—which compares favorably with analogous data breach class actions. *Id.* ¶ 17; *see, e.g., In re Wawa, Inc. Data Sec. Litig.*, No. 19-6019, 2024 U.S. Dist. LEXIS 65200, at *71 (E.D. Pa. Apr. 9, 2024) (collecting cases) (explaining that a claims rate of 2.56% "compares favorably to the claims rates in other data breach class actions"); *Brent v. Advanced Med. Mgmt., LLC*, No. 23-3254, 2024 U.S. Dist. LEXIS 227423, at *11 (D. Md. Dec. 13, 2024) (granting final approval and noting that "a claims rate of 3.27% . . . compares favorably to [] breach-related class actions").

As detailed *infra*, the Settlement is fair, reasonable, and adequate pursuant to Rule 23. Thus, Plaintiffs respectfully move the Court for an Order granting final certification of the Settlement Class, final approval of the Settlement, and Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards.

## II.    INCORPORATION BY REFERENCE

In the interests of efficiency, for factual and procedural background on this case, Plaintiffs respectfully refer the Court to, and hereby incorporate Plaintiffs' Motion for Preliminary Approval of Class Action Settlement filed on August 2, 2024, and the accompanying Exhibits, including the proposed Settlement Agreement, filed in conjunction therewith. ECF 52–53. Plaintiffs also incorporate by reference Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards, filed on October 25, 2024. ECF 56–57.

---

[1] Attached hereto as **Exhibit 1**.

### III.    SETTLEMENT SUMMARY

#### A. The Settlement Class and Benefits

The Settlement provides for the certification of a Settlement Class defined as: "[a]ll individuals residing in the United States for whom Defendant has contact information and/or identifying information, such as date of birth or Social Security number, whose Personal Information was potentially compromised in the Data Incident disclosed by Injured Workers Pharmacy in February 2022." S.A. ¶ 47. Excluded from the Settlement Class are: "(1) the judges presiding over this Action, and members of their direct families; (2) the Defendant, their subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or their parents have a controlling interest, and their current or former officers and directors; and (3) Settlement Class Members who submit a valid Request for Exclusion prior to the Opt-Out Deadline." *Id*.

The Settlement provides both substantial monetary and injunctive relief. *Id*. ¶¶ 56–61. First, the non-reversionary Settlement Fund of $1,075,000.00 will pay for: (1) up to $5,000.00 per person for unreimbursed ordinary and/or extraordinary economic losses (e.g., losses relating to fraud or identity theft, fees for credit repair services, and costs associated with freezing or unfreezing credit); (2) *pro rata* cash payments[2] which are increased or decreased depending upon the number of valid claims filed and the amount of funds available for these payments; and (3) two years of credit monitoring. *Id*. ¶ 61. Additionally, the Settlement Fund will be used to pay for Notice costs, Settlement Administration costs, Service Awards, and Attorneys' Fees. *Id*. ¶ 59. Finally, the Settlement provides substantial injunctive relief whereby Defendant implemented additional data

---

[2] As of December 27, 2024, the estimated value of the *pro rata* cash payments is $55.65 per claimant. Aldridge Decl., ¶ 17.

security measures—the costs of which Defendant paid separate and apart from the Settlement Fund and other Settlement benefits. *Id*. ¶ 75.

### B. Attorney Fees, Costs, and Service Awards

On October 25, 2024, Plaintiffs filed their Motion For Attorneys' Fees, Expenses, and Service Awards. ECF 56–57. Therein, Plaintiffs requested "(1) attorneys' fees of $358,333.33, expenses in the amount of $21,961.70, and service awards to the Class Representatives in the amount of $5,000 each; and (2) granting such other relief and further relief as the Court deems just and proper." ECF 56.

### C. Settlement Administration, Notice, and Claims

On August 13, 2024, EisnerAmper received the Settlement Class List which included 134,361 individual records. Aldridge Decl. ¶ 7. Three days later, EisnerAmper sent notice of the Settlement to the Attorneys General of all U.S. states, District of Columbia, Puerto Rico, as well as the Attorney General of the United States. *Id*. ¶ 6. EisnerAmper has not received any objection from any Attorney General. *Id*.

From the Settlement Class List, EisnerAmper removed duplicative records—which resulted in 132,491 unique records (i.e., the Class). *Id*. ¶ 7. Initially, EisnerAmper had address information for 125,849 Settlement Class Members. *Id*. However, EisnerAmper used two third-party vendor databases for the 6,642 records without a complete address in order to obtain an address sufficient to attempt mailing. *Id*. Thus, EisnerAmper was able to identify 4,751 additional addresses resulting in a total of 130,600 records. *Id.* Prior to mailing, EisnerAmper checked all mailing addresses against the National Change of Address (NCOA) database maintained by the United States Postal Service. *Id*. ¶ 9. Additionally, EisnerAmper verified the mailing addresses via the Coding Accuracy Support System (CASS) and Delivery Point Validation (DPV)—of which

4

Case 1:22-cv-10797-RGS    Document 60    Filed 01/02/25    Page 6 of 16

665 records failed the address validation procedures. *Id*. However, EisnerAmper executed skip tracing and obtained new addresses for 385 Settlement Class Members. *Id*. Thus, in total, EisnerAmper obtained accurate addresses for 130,320 Settlement Class Members. *Id*.

On September 9, 2024, EisnerAmper issued notice as contemplated by the Settlement Agreement and as approved by the Court—wherein EisnerAmper issued direct notice by sending the Short Form Notice (i.e., postcard) via First-Class Mail. *Id*, ¶¶ 8, 13–14. Therein, the Short Form Notice provided (A) a "tear-off" Claim Form with prepaid return postage; (B) the web address to the case website; (C) rights and options as a Settlement Class Member and the dates by which to act; and (D) the date of the Final Approval Hearing. *Id*. ¶ 8. Thereafter, EisnerAmper also sent supplemental mailings for 12,923 Settlement Class Members whose initial Short Form Notice were unable to be delivered. *Id*. ¶ 10.

On September 9, 2024, EisnerAmper published the Settlement Website "www.IWPDataSettlement.com" which provided Settlement Class Members with easy access to the Long Form Notice (in English and Spanish), the Claim Form, and all other relevant documents. *Id*. ¶ 13. The Settlement Website provided Settlement Class Members with the option to submit claims electronically. *Id.* Additionally, the Settlement Website allowed Settlement Class Members to easily find answers to frequently asked questions (FAQs), important dates and deadlines, and contact information for EisnerAmper. *Id*. Notably, as of December 27, 2024, the Settlement Website received 17,163 unique visits. *Id*.

On September 9, 2024, EisnerAmper also established a toll-free phone number—which is available twenty-four hours per day—whereby Settlement Class Members can receive answers to frequently asked questions. *Id.* ¶ 14. Therein, Settlement Class Members can call and interact with an interactive voice response system that provides important settlement information and offers the

5

ability to leave a voicemail message to address specific requests or issues. *Id*. Additionally, EisnerAmper established a dedicated email address (info@IWPDataSettlement.com) to provide an additional option for Settlement Class Members to ask specific questions and make requests. *Id*. ¶ 15. EisnerAmper also established a dedicated Post Office Box ("P.O. Box") to receive any Settlement related mailings. *Id*. ¶ 12. EisnerAmper monitors the P.O. Box daily and uses a dedicated mail intake team to process each item. *Id*. On November 8, 2024, EisnerAmper mailed "reminder" Postcard Notices to the 119,337 Settlement Class Members who had not submitted a claim but had deliverable mailing addresses. *Id*. ¶ 11.

Ultimately, EisnerAmper succeeded in sending direct notice to 122,179 Settlement Class Members—which equates to 92.21% of the entire Settlement Class. *Id*. ¶ 16. On November 8, 2024, the deadlines to object to the settlement or to request exclusion (i.e., opt-out) both passed. *Id*. ¶¶ 18–19. In total, there were only two (2) requests for exclusion and zero (0) objections. *Id*. On December 9, 2024, the Claims Period ended. *Id*. ¶ 17.

IV.   **ARGUMENT**

    **A. The Settlement is Fair, Reasonable, and Adequate.**

The Court previously determined that the Settlement is fair, reasonable, and adequate under Fed. R. Civ. P. 23, that the Settlement is within the range of possible approval, and that the Settlement was entered into after extensive, arm's-length negotiations. ECF 54. Moreover, Plaintiffs' Memorandum of Law in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement (the "Preliminary Approval Memorandum") detailed how the Settlement satisfies the Rule 23(e) factors, the Rule 23(a) elements, and Rule 23(b)(3) elements.[3] ECF 53, at

---

[3] For the sake of brevity, Plaintiffs will not restate the full analysis found in Preliminary Approval Memorandum. *See* ECF 54. However, for the sake of thoroughness, Plaintiffs summarize *infra* how the Settlement satisfies Rules 23(e), 23(a), and 23(b)(3).

8–18. Since then, there has been no intervening change that would disturb the Court's initial determination—thus, the Court should now finally determine that the Settlement is fair, reasonable, and adequate and should be approved.

"The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). Approval under Rule 23(e) involves two steps where "[a]t the first stage, the court makes a preliminary determination regarding the fairness, reasonableness, and adequacy of the settlement terms" and "[a]t the second stage, after notice to all class members and a hearing at which class members may appear to support or object to the proposed settlement, the court determines whether final approval is warranted." *Mongue v. The Wheatleigh Corp.*, No. 3:18-cv-30095, 2023 U.S. Dist. LEXIS 147961, at *12 (D. Mass. Aug. 23, 2023) (collecting cases). "While the district court must carefully assess the proposed settlement, at the end of the day, 'there is a **presumption** in its favor so long as parties engaged in arms-length negotiations after meaningful discovery.'" *Id.* (emphasis added) (quoting *In re: Ranbaxy Generic Drug Application Antitrust Litig.*, 630 F. Supp. 3d 241, 244-45 (D. Mass. 2022)); *see also Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 343 (D. Mass. 2015) ("There is a presumption that a settlement is within the range of reasonableness '[w]hen sufficient discovery has been provided and the parties have bargained at arms-length.'") (quoting *City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996)). Moreover, "[t]he determination of whether a settlement is fair, reasonable and adequate . . . should be evaluated within the context of the public policy favoring settlement." *Hill v. State St. Corp.*, 2014 U.S. Dist. LEXIS 179702, at *17 (D. Mass. Nov. 26, 2014); *see also P.R. Dairy Farmers Ass'n v. Pagan*, 748 F.3d 13, 20 (1st Cir. 2014) (noting the "strong public policy in favor of settlements").

The Settlement satisfies Rule 23 and is fair, reasonable, and adequate. Indeed, the Settlement Fund of $1,075,000 represents a value of approximately $8.11 per Settlement Class Member (given that there are 132,491 Settlement Class Members). ECF 53, at 3; S.A. ¶ 56; Alridge Decl. ¶ 7. As detailed below, this value compares favorably to analogous data breach settlements.

| Case | Settlement Amount | Class Size | Per Person |
|---|---|---|---|
| *Holden v. Guardian Analytics, Inc.*, No. 2:23-cv-2115 (D.N.J.) | $1,430,207.50 | 197,270 | $7.25 |
| *Reynolds v. Marymount Manhattan College*, No. 1:22-cv-06846 (S.D.N.Y.) | $1,300,000 | 191,752 | $6.78 |
| *Tucker v. Marietta Area Health Care*, No. 2:22-cv-00184 (S.D. Ohio) | $1,750,000 | 216,478 | $8.08 |
| *Bingaman, et al. v. Avem Health Partners Inc.*, No. CIV23-130 (W.D. Okla.) | $1,450,000 | 271,303 | $5.34 |
| *In re C.R. England, Inc. Data Breach Litig.*, No. 2:22-cv-374 (D. Utah) | $1,400,000 | 219,208 | $6.39 |
| *Fernandez v. 90 Degree Benefits Wisconsin et al*, No. 2:22-cv-799 (E.D. Wis.) | $990,000 | 183,329 | $5.40 |
| *Kondo et al. v. Creative Services, Inc.*, No. 1:22-cv-10438 (D. Mass.) | $1,200,000 | 164,956 | $7.27 |

As outlined in the preliminary approval motion, Plaintiffs faced significant risks and costs should they have continued to litigate the case. ECF 53, at 6, 11; *see also In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21, 35 (D. Me. 2013) (denying class certification in cybersecurity incident class action litigation); *Marriott Int'l, Inc. v. Accenture LLP*, 78 F.4th 677, 680 (4th Cir. 2023) (decertifying classes); *Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415, 2019 U.S. Dist. LEXIS 215430, at *3 (D. Colo. Dec. 16, 2019) (explaining that data breach cases are "are particularly risky, expensive, and complex"); *Koenig v. Lime Crime, Inc.*, No. CV 16-503, 2018 U.S. Dist. LEXIS 245359, at *9 (C.D. Cal. Apr. 2, 2018) (approving data breach settlement and finding in part that "[b]ecause of the

difficulty of proving damages and causation Plaintiffs faced a substantial risk of losing at summary judgment or at trial").

Furthermore, the fairness, reasonableness, and adequacy of the Settlement is supported by the oversight of Judge Wayne Andersen (Ret.) from JAMS during a mediation session on March 5, 2024. ECF 53-2, ¶ 9. In fact, the Parties were unable to agree upon the Settlement until after the mediation session. *Id*. ¶ 10. However, guided by Judge Andersen's proposals, the Parties ultimately negotiated and finalized the Settlement. *Id*. ¶¶ 10–14.

### B. The Settlement Satisfies Rule 23(e)(2).

Final approval is proper because the Settlement satisfies Rule 23(e)(2)—which "sets forth four factors for the court to consider" when determining whether a settlement is fair, reasonable, and adequate. *Mongue*, 2023 U.S. Dist. LEXIS 147961, at *13 (D. Mass. Aug. 23, 2023) (quoting Fed. R. Civ. P. 23(e)(2)). Here, Class Counsel summarizes and expands upon the Rule 23(e) analysis from the Preliminary Approval Memorandum.

*First*, final approval is proper because "the class representatives and class counsel have adequately represented the class[.]" Fed. R. Civ. P. 23(e)(2)(A). Here, adequacy is satisfied because Class Representatives and Class Counsel secured the Settlement only after years of substantial litigation—including a successful appeal by Plaintiffs to the United States Court of Appeals for the First Circuit, coordination of the various Plaintiffs, substantial formal and informal discovery, and mediation with Hon. Wayne Andersen (Ret.) from JAMS. S.A. ¶ I (1–5).

*Second*, final approval is proper because "the proposal was negotiated at arm's length[.]" Fed. R. Civ. P. 23(e)(2)(B). Here, Class Counsel secured the Settlement after "serious arm's length settlement negotiations" which included "a private mediation with Judge Wayne Andersen (Ret.) from JAMS." ECF 53-2, at ¶¶ 9, 16; *see also Nat'l Ass'n of the Deaf v. Mass. Inst. of Tech*., No.

9

3:15-cv-30024, 2020 U.S. Dist. LEXIS 53643, at *11 (D. Mass. Mar. 27, 2020) (collecting cases) ("A settlement is presumed to be reasonable when it is achieved by arm's length negotiations conducted by experienced counsel."); *Rolland v. Cellucci*, 191 F.R.D. 3, 10 (D. Mass. 2000) ("When the parties' attorneys are experienced and knowledgeable about the facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight.").

***Third***, final approval is proper because "the relief provided for the class is adequate[.]" Fed. R. Civ. P. 23(e)(2)(C). Here, Class Counsel secured adequate relief insofar as the Settlement establishes a Settlement Fund of $1,075,000 and provides substantial injunctive relief (i.e., Defendant invested in additional security measures). S.A. ¶¶ 56, 61, 75. Moreover, as detailed *supra*, the Settlement provides a value of approximately $8.11 per Settlement Class Member— which exceeds the value provided by analogous settlements. ECF 53, at 3; S.A. ¶ 56; *see also Kondo et al. v. Creative Services, Inc.*, No. 1:22-cv-10438 (D. Mass. Sept. 7, 2023) (granting final approval of data breach settlement that provided $7.27 per class member).

***Fourth***, final approval is proper because "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Here, all Settlement Class Members are equally entitled to seek compensation from the Settlement Fund. *See* S.A. ¶¶ 61–65. And all Settlement Class Members equally benefit from the injunctive relief provided by the Settlement (i.e., additional security measures). *Id*. ¶ 75. Thus, the Settlement satisfies Rule 23(e)—which supports final approval.

### C. The Settlement Satisfies Rule 23(a).

Final approval is proper because the Settlement Class satisfies Rule 23(a). *See* ECF 53, at 16–17. Here too, Class Counsel summarizes the Rule 23(e) analysis from the Preliminary Approval

10

Memorandum. ***First***, the Settlement Class satisfies "numerosity" because there are approximately 132,491 Settlement Class Members. Aldridge Decl. ¶ 7. ***Second***, the Settlement Class satisfies "commonality" because Settlement Class Members' injuries all arise from the same common event (Defendant's Data Breach). ECF 53, at 16. ***Third***, the Settlement Class satisfies "typicality" because Plaintiffs' injuries are typical given that all Settlement Class Members (including Plaintiffs) suffered from the same Data Breach. *Id*. ***Fourth***, the Settlement Class satisfies "adequacy" because Plaintiffs' interests align with those of the Settlement Class and because Class Counsel are experienced in data breach class action litigation. *Id*. Thus, the Settlement Class satisfies Rule 23(a)—which supports final approval. *See also Kondo*, No. 1:22-cv-10438, ¶ 7 (D. Mass. Sept. 7, 2023) (granting final approval because the data breach settlement satisfied numerosity, commonality, typicality, and adequacy satisfied).

### D. The Settlement Satisfies Rule 23(b)(3).

Final approval is proper because the Settlement Class satisfies Rule 23(b)(3). *See* ECF 53, at 17–19. ***First***, the Settlement Class satisfies "predominance" because there are many common questions of law and fact (regarding the Data Breach, Defendant's actions, and Plaintiffs' injuries) which predominate over any individual issues. *Id*. ***Second***, the Settlement Class satisfies "superiority" because litigating the induvial claims of 132,491 Settlement Class Members would strain judicial resources. *Id*. Thus, the Settlement Class satisfies Rule 23(b)(3)—which supports final approval. *See also Kondo*, No. 1:22-cv-10438, ¶ 7 (D. Mass. Sept. 7, 2023) (granting final approval because the data breach settlement satisfied predominance and superiority).

### E. Opt-Outs, Objections, and Claims

Out of the approximately 132,491 Settlement Class Members, only two (2) chose to opt out, and zero (0) objections were filed. Aldridge Decl. ¶¶ 18–19. Such a result strongly favors final

approval. *See Mongue*, 2024 U.S. Dist. LEXIS 69928, at *7 (D. Mass. Apr. 16, 2024) (granting final approval and explaining that "[i]mportantly, no Class Members opted out or objected to the settlement, which results in their obtaining sizeable monetary awards . . . and avoids the risk of their receiving nothing following additional uncertain litigation"). Moreover, EisnerAmper received 8,320 valid claims which equates to a 6.3% claims rate—which, as explained *supra*, compares favorably with analogous data breach class actions. Aldridge Decl. ¶ 17; *In re Wawa, Inc. Data Sec. Litig.*, 2024 U.S. Dist. LEXIS 65200, at *71 (collecting cases) (explaining that a claims rate of 2.56% "compares favorably to the claims rates in other data breach class actions"). Such results strongly favor final approval.

### F. The Court Should Finally Certify the Settlement Class.

Settlement classes are routinely certified for settlement in analogous data breach cases.[4] Likewise, this Settlement is also fair, reasonable, adequate, and also meets the Rule 23(a) requirements (numerosity, commonality, typicality, and adequacy) and the Rule 23(b)(3) requirements (predominance and superiority). ECF 54. Thus, the Court should finally certify the Settlement Class for the reasons set forth in Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement. ECF 52–53.

---

[4] *See, e.g., Abubaker v. Dominion Dental USA, Inc.,* No. 1:19-cv-01050, 2021 U.S. Dist. LEXIS 252202 (E.D. Va. Nov. 19, 2021); *Hutton v. Nat'l Bd. of Examiners in Optometry, Inc.,* No. l:16- cv-03025, 2019 U.S. Dist. LEXIS 120558 (D. Md. July 15, 2019); *In re Equifax Inc. Customer Data Security Breach Litig.,* No. l:17-md-2800, 2020 U.S. Dist. LEXIS 118209 (N.D. Ga. March 17, 2020), *aff'd in relevant part* 999 F.3d 1247 (11th Cir. 2021), *cert. denied sub nom. Huang v. Spector,* 142 S. Ct. 431 (2021), and *cert. denied sub nom. Watkins v. Spector,* 142 S. Ct. 765 (2022); *In re Anthem, Inc. Data Breach Litig.,* 327 F.R.D. 299 (N.D. Cal. 2018); *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.,* 341 F.R.D. 128, 172-74 (D. Md. 2022) (certifying certain statewide classes; Rule 23(f) appeal granted).

### G. Notice Satisfied Due Process and Rule 23.

Final approval is proper when "notice was conducted in a reasonable manner, consistent with Fed. R. Civ. P. 23 and due process concerns." *Bezdek*, 79 F. Supp. 3d at 336 (D. Mass. 2015). Thus, "notice of a class action settlement must be reasonably calculated to reach the absent class members." *Id*. (cleaned up) (quoting *Reppert v. Marvin Lumber & Cedar Co*., 359 F.3d 53, 56 (1st Cir. 2004)). Here, the Court previously approved the Notice Plan proposed in this case and found it satisfied all requirements of due process and Rule 23. ECF 54.

As detailed *supra*, EisnerAmper issued notice in the best practicable manner by directly notifying a substantial portion of the Class via direct mail notice. Aldridge Decl. ¶¶ 7–15. The reach rate of the notice program was 92.21%—which far exceeds the accepted threshold of 70%. *Id*. ¶ 16; *see also Federal Judicial Center, Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* 1 (2010) (recognizing the effectiveness of notice that reaches between 70 and 95 percent of the class); *In re Tiktok, Inc., Consumer Priv. Litig*., 617 F. Supp. 3d 904, 928 (N.D. Ill. 2022) (granting final approval when notice "clear[ed] the Federal Judicial Center's seventy-percent threshold"). Such notice complies with the program approved by this Court in its Preliminary Approval Order, is consistent with Notice Programs across the United States and is considered a "high percentage" that is within the "norm." *See* Barbara J. Rothstein & Thomas E. Willging, *Managing Class Action Litigation: A Pocket Guide for Judges*, 27 (3d ed. 2010). Thus, Notice satisfied due process and Rule 23.

### H. The Unopposed Motion for Attorneys' Fees, Expenses, and Service Awards Should Be Approved.

On October 25, 2024, Plaintiffs filed their Motion For Attorneys' Fees, Expenses, and Service Awards. ECF 56–57. As explained therein, the requested amount of attorneys' fees is reasonable and represents a ***negative*** lodestar multiplier of –1.16. ECF 57, at 13. Furthermore, zero

(0) objections were filed in opposition to Plaintiffs' request for attorneys' fees. Alridge Decl. ¶ 19. Moreover, the requested Service Awards are reasonable and warranted. ECF 57, at 14–15. Here too, zero (0) objections were filed in opposition to the requested Service Awards. Alridge Decl. ¶ 19. Such positive reactions by the Settlement Class are significant and strongly support Plaintiffs's Motion For Attorneys' Fees, Expenses, and Service Awards.

## V.   CONCLUSION

For the reasons discussed herein, Plaintiffs respectfully request that the Court enter an Order: (1) granting final certification of the Settlement Class; (2) granting final approval of the Settlement; and (3) granting Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards.

Dated: January 2, 2025                                  Respectfully submitted,

By: /s/ Raina C. Borrelli
   Raina C. Borrelli*
   **STRAUSS BORRELLI PLLC**
   One Magnificent Mile
   980 N. Michigan Avenue, Suite 1610
   Chicago, Illinois 60611
   Telephone: (872) 263-1100
   Facsimile: (872) 263-1109
   raina@straussborrelli.com

   David K. Lietz*
   **MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
   5335 Wisconsin Avenue NW, Suite 440
   Washington, D.C. 20015-2052
   Telephone: (866) 252-0878
   Facsimile: (202) 686-2877
   dlietz@milberg.com

   *Admitted Pro Hac Vice*
   *Attorneys for Plaintiffs and Settlement Class*

## CERTIFICATE OF SERVICE

I, Raina C. Borrelli, hereby certify that on January 2, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record via the ECF system.

DATED this 2nd day of January, 2025.

                                STRAUSS BORRELLI PLLC

                                By: */s/ Raina C. Borrelli*
                                     Raina C. Borrelli
                                     raina@straussborrelli.com
                                     STRAUSS BORRELLI PLLC
                                     One Magnificent Mile
                                     980 N Michigan Avenue, Suite 1610
                                     Chicago IL, 60611
                                     Telephone: (872) 263-1100
                                     Facsimile: (872) 263-1109